[Civ. No. 477. Fourth Appellate District.—September 28, 1931.]

HELENE A. JOHNSTON, Respondent, v. J. E. PEAIRS, Appellant.

Edward J. Kelly for Appellant.

Harry William Elliott and Vernon W. Hunt for Respondent.

BARNARD, P. J.—This is an action by a pedestrian to recover for injuries claimed to have been received due to the collision of two automobiles, and to have been caused by the negligence of both drivers. The collision occurred at the corner of Third and Laurel Streets in the city of San Diego, just before noon on April 24, 1929. The plaintiff, a lady of the age of sixty-five years, had just left a hall some half block from the intersection in question, where she had been exercising. She was proceeding along the sidewalk and had just reached the street corner when an automobile jumped the curb and struck her down, rendering her unconscious, breaking both legs and causing other serious injuries. It appears from the evidence that immediately before the plaintiff was struck, the defendant Mrs. W. S. Whiteside was driving a Buick roadster in a westerly direction along Laurel Street; that the defendant J. E. Peairs, who is a physician, was driving a Buick touring car in a northerly direction along Third Street; and that the two cars came together near the center of this intersection. Just before they collided, Mrs. Whiteside swerved slightly to her right and Peairs swerved slightly to his left. Dr. Peairs' car struck the Whiteside car near the center of its left side, the side of the car and the running board being smashed and caved in, and the door knocked off its hinges. The force of the impact threw Mrs. Whiteside forward against the steering-wheel, rendering her unconscious. Following the impact the Whiteside car proceeded to the northwest corner of the intersection, jumped the curb, struck the plaintiff, crashed into a building and rebounded to the curb, where it came to a stop. The machine driven by Peairs stopped within a few feet of the point of collision. The action was tried before a jury and a verdict for $15,000 was returned against all of the defendants. From the judgment which followed the defendant Peairs alone has appealed.

. As is not unusual in such cases, the principal dispute seems to have been between the respective defendants, each of whom endeavored to place the blame upon the other. While there are many conflicts in the evidence, most of these relate to this dispute between the defendants and few affect the situation as regards the plaintiff. It may be said here, as was said in *Crabbe* v. *Rhoades,* 101 Cal. App. 503 [282 Pac. . 10, 18] : ". . . it is clear that the liability of appellant . . . depended entirely upon the answer to the questions whether he himself was or was not negligent, and whether or not such negligence, if it existed, proximately caused or contributed to the injuries complained of. These questions are wholly independent of the question as to whether or not his codefendant . . . was also liable."

The record contains ample evidence to show that appellant was guilty of negligence which contributed to the injuries sustained by the plaintiff. There was evidence that Mrs. Whiteside entered the intersection at a speed of fifteen miles an hour, and that when she entered the intersection she saw Dr. Peairs' car twenty feet south of the intersection. There was also evidence that Dr. Peairs' car entered the intersection at about thirty miles an hour and that he did not lessen his speed appreciably; that the Whiteside car turned slightly to the right and the Peairs car slightly to the left; that the Peairs car struck the Whiteside car a glancing blow at an acute angle; and that the Whiteside car immediately shot forward and went over the sidewalk. Appellant does not seriously contend that there is no evidence showing negligence on his part but relies rather upon alleged errors of law.

The first point raised is that the court erred in permitting witness, Dr. Yale, to state his conclusions as to the cause of the accident. This witness testified that he was standing about 130 feet from the intersection in question and saw the collision; that appellant's car was going about thirty miles an hour and did not slacken its speed appreciably as it entered the intersection; that Mrs. Whiteside had come into the intersection at not more than twenty miles an hour; that as appellant's car approached, Mrs. Whiteside turned slightly, came almost to a stop and was struck a glancing blow at an acute angle; and that her car im-

mediately shot forward and hit the building on the corner. The record then shows the following:

"You mean that is the angle that the two cars collided? A. The two cars collided. His car was going this way and her car was coming this way; and it was an acute angle. And that forced her car forward. She got the force of the blow in such a direction that it forced her car directly forward.

"Mr. Kelly: I ask that that be stricken out as a conclusion and argumentative.

"The Court: The motion is denied. I think he can testify on that question."

Appellant argues that it is apparent from this that the plaintiff's theory as to the liability of the appellant is that her having been struck by the Whiteside car was caused solely by the propulsive force given to the Whiteside car by appellant's car. It is then insisted that the answer of the witness just quoted contained not statements of fact but the conclusions of the witness as to the cause of the accident, and that its admission was prejudicial error. It is also urged that this error was accentuated by the subsequent refusal of the court to admit the conclusions of other witnesses, claimed to have been experts, upon the question as to whether the crossing of the sidewalk by the Whiteside car was caused solely by the propulsive force of the appellant's car. It may first be observed that the language here complained of was used while the witness was describing what he had seen. While there is an element of conclusion in what the witness said, the statement of a witness that he sees one car push another forward contains also an element of fact that is somewhat different from the ordinary case of a witness stating conclusions not connected with the recital of things seen by him. Assuming, but not holding, that the admission of this statement would have been error, as affecting the controversy between the drivers of the two automobiles, a somewhat different situation is presented in this action brought by an innocent third party against both drivers. In *Crabbe* v. *Rhoades, supra,* in commenting upon an erroneous instruction, the court said: "Had this been an action brought by Mrs. Gaston against Rhoades, undoubtedly the giving of the instructions criticized herein would have constituted reversible error, but being an action by an innocent third party against both the situation is entirely different."

The question with which we are here concerned depends entirely upon whether or not the appellant was negligent, and if so, whether or not such negligence proximately caused or contributed to the injuries suffered by the plaintiff. As we have pointed out, the record contains ample evidence of such negligence, and that it either caused or contributed to the injuries sustained. So far as this plaintiff is concerned, the important facts are that the Whiteside car came upon the sidewalk, where she had a right to be, and that some act was done by the appellant which caused or contributed to that result. Plaintiff's recovery does not depend upon the theory that the crossing of the sidewalk by the Whiteside car was caused solely by a propulsive force given to it by appellant's car. It makes no difference whether this unusual situation was caused by such a propulsive force as referred to, whether it was caused by a pressing down of the accelerator when Mrs. Whiteside was thrown forward by the impact, or whether it was caused by something she did in her confusion upon being struck by appellant's car. The matter of opinion complained of, if assumed to be prejudicial as between the respective drivers, is not of sufficient importance in relation to the questions at issue between the plaintiff and the appellant, to justify a reversal. ■ It is well settled that an appellant may not complain of errors as between himself and such a joint defendant, if they are not such as to affect in an important manner his relations to the plaintiff.

■ Twelve points are raised by appellant, in which it is claimed that the court erred in excluding the testimony of experts, which testimony was offered for the purpose of impeaching the testimony of plaintiff's witnesses as to the movement of the automobiles after the collision. The first of these witnesses was an automobile mechanic, who, by way of qualification, testified that he had had many years' experience in repairing automobiles; that he had examined and analyzed the wrecks of cars on the ground where the wrecks had occurred; and that he had examined, studied and analyzed the effects of collisions quite generally. Error is alleged in that the court refused to permit this witness to answer four questions, of which the following are typical:

"Now, Mr. Spencer, assuming that this map may represent the intersection of Third and Laurel streets, up being north,

down south, to my right east, and towards you west; this is Laurel, as indicated, and this Third; and, assuming that an automobile enters the intersection, traveling west on Laurel street, turns at an angle of approximately thirty-seven and one-half degrees north of west, as indicated in this line here, and comes to a stop about forty feet from the corner of the property line here, and while practically stopped is struck by an automobile, traveling north and turning approximately forty-five degrees west, what would be the effect upon the car struck, if you know?''

"Can you, from your experience as a repair man of automobiles, tell at what speed an automobile would have to travel to scale that curb?''

Another witness, by way of qualification, testified that he was an automobile mechanic of fourteen years' experience; that he arrived on the scene a few moments after the collision and removed appellant's car; and that he saw the condition of the cars and the marks upon the pavement. Also, that he had witnessed a great many collisions of automobiles and had repaired many cars involved in such occurrences. Error is alleged in that the court refused to permit him to answer seven questions, of which the following are typical:

"Q. Could you tell, from your experience and knowledge of automobiles, how fast that Buick touring car was traveling at the time of the collision at Third and Laurel?''

"Q. Could you tell from an examination of these cars and the entire circumstances, as you viewed them upon the ground, which automobile was traveling the faster?''

"Q. If an automobile traveling in the direction in which I am now indicating, that is, west thirty-seven and one-half degrees north and coming practically to a standstill, is struck by an automobile traveling west forty-five degrees north, as indicated here, at about the middle of the automobile traveling thirty-seven and one-half degrees north, what would be the effect upon the automobile thus struck?''

Again, in the absence of the jury, appellant's counsel offered to prove by the testimony of these mechanics that in the event of a collision between two automobiles of the type involved here, while going at any of the speeds within the range disclosed by the evidence in this case, and striking at the angles shown by the evidence for the plaintiff, the road-

ster would be either upset or stopped, and tied to the touring car in such a manner that it would be a physical and mechanical impossibility for it to travel forty-five feet or any appreciable part of that distance.

The refusal of the court to admit such testimony is assigned as error. It is appellant's contention that expert testimony was admissible to prove that these cars could not, if struck in the manner and under the circumstances testified to by plaintiff's witnesses, have moved or come to rest in the manner also testified to. Such a contention is well answered in the case of *Fishman* v. *Silva,* 116 Cal. App. 1 [2 Pac. (2d) 473], in which the court said: "It is needless to add, as in all such cases, there is presented a wide field for argument, the main theme of which is physical facts and the so-called immutable laws of physics. Contentions based on these foundations are usually not convincing, strange as it may seem, for the simple reason that in partisan presentation there is an ever-present temptation to forget essential facts which do not fit in. For instance, where it is argued that where there is a contact of two bodies in a given position, the direction of the applied force will control the position of the bodies after the impact, any rule or law, in the abstract will be found of little value when we have the additional factors of each body in motion and controlled by independent agencies. Experience has shown the futility of attempted demonstration in accident cases; there are too many varying factors. Among these variants we may class indefinite rate of speed, condition of the highway, judgment or lack thereof in the drivers, a direct blow or a glancing one, and the balance or equilibrium of each car at the time of impact."

In that case the court further said: "With this background it was sought by this appellant to qualify the witness as an expert to testify as to his opinion concerning the probable course the respective cars would take after the impact. The court sustained the objections of all other parties to the action on the grounds that it was not a proper subject for expert testimony; that no proper foundation had been laid; and that the hypothetical question sought to be propounded did not embrace an accurate statement either of the facts as adduced or any appropriate or possible theory that might be sustained from the facts in evidence. The fact that the

witness had dragged in wrecks off the highway in no way qualified him. The questions under investigation were not the subject of expert testimony, as it is obvious that no expert, outside of the so-called psychiatrist, can even venture an opinion as to what two different people might do in the management of a car in an emergency. Having before it all of the evidence as to the location of the cars after the accident and before, and having likewise before it photographic exhibits showing the condition of each car after the accident, it would seem strange if the power or duty of the court to determine the issues presented must be supplanted by the opinion of some gentleman whose sole qualification appears to be that he had towed wrecks off the highway for nine years.''

In our opinion the case before the court was not one justifying the admission of such expert evidence as was offered, and the rulings complained of were properly made. We think this is peculiarly true in such a case as this, where the essential question is not the precise manner in which the automobile was propelled across the sidewalk, but whether the appellant was guilty of any negligence which proximately contributed to that happening.

In a number of points appellant contends that the court erred in admitting the testimony of a witness, a chiropractor, who testified that he treated the plaintiff following her accident and testified as to the result of his examination of the plaintiff, and as to her condition at the time of the trial, including his opinion as to the cause of certain conditions and whether or not certain conditions were likely to be permanent. Objection was made to this testimony on the ground that the witness had not properly qualified as an expert. The witness testified that he was a graduate of a chiropractic college; that he had been practicing since 1922 and was licensed in California; that he had put in 2900 hours in studying anatomy, physiology, symptomatology, bacteriology, chemistry, histology, obstetrics, etc., and that he had practiced eight years in San Diego. The question as to the qualification of an expert witness is in the first instance, one largely within the sound discretion of the trial court. (*Burns* v. *Osborne-Fitzpatrick Finance Co.*, 101 Cal. App. 680 [282 Pac. 419].) We think the evidence here is sufficient to show that this discretion was

not abused, and that certain alleged weaknesses in the tesimony affect its weight and not its admissibility. In this connection it may be added that several physicians testified to the same conditions and gave similar opinions, and no harm or injury is shown.

■ A further objection is made that an elastic hose was admitted in evidence, being one that had not been actually worn by Mrs. Johnston. It is insisted that this was not admissible and that it was introduced solely for the purpose of exciting the passion and prejudice of the jury. One of the plaintiff's physicians had testified that he had recommended an elastic stocking for her knee, and the plaintiff testified that she was wearing an elastic hose like the one introduced in evidence. We see no harm in this, nor in the fact that the one actually worn by the plaintiff was not removed for the purpose of exhibition.

■ It is next urged that the verdict is so excessive as to indicate passion and prejudice on the part of the jurors. It is well settled that a verdict may be set aside upon this ground only when it is so grossly disproportionate to the injury suffered as to shock the sense of justice and indicate that it is based upon passion or prejudice upon the part of the jury. (*Von Stetten* v. *Yellow-Checker Cab Co.*, 100 Cal. App. 775 [281 Pac. 95].) ■ While certain conflicts and weaknesses in the evidence are pointed out by appellant, there is ample evidence of serious injury, including the following: The plaintiff was unconscious for a considerable time after the accident and remained in the hospital for ten days, following which she had a trained nurse at home; she had several physicians, was treated at home for three or four weeks and later at the doctor's office; and later she had four periods of treatment at a sanitarium. Both of her legs were broken; her back was hurt; she was unable to turn her head; her chest was so injured as to interfere with her breathing; and she was injured in many parts of her body and suffered great pain for a considerable time. She was unable to sign checks for four months and unable to perform her ordinary duties up to the time of the trial. She still wore a surgical corset and elastic hose at the time of the trial, and she testified that her hearing and eyesight had been permanently impaired. Whereas she had previously been able to walk long distances, at the time of the

trial she could only walk two blocks, and then only by sitting down in the middle of every block. At the time of the trial she could still feel a bone slipping when she walked and was still awakened at night by intense pain. Her testimony was corroborated by several doctors, one of whom testified that she would have to wear a support for her knee as long as she lived, and that certain of her injuries would probably be permanent. She was taking treatments at the time of the trial. Without further analyzing the evidence, we may say it is of such a nature that under the well-established rules we cannot reverse the judgment as excessive.

One more point remains to be considered. The record shows that during the course of the trial the court made the following remarks: "Let me interrupt a moment. There are some indications, there is some interested party who is sort of indicating to the jury, apparently in some way, making signals backwards and forwards. I am calling attention to some of the ladies in the front part of the courtroom who have apparently been giving signals, and, so on, backwards and forwards, between one or two of the jurors and one or two of these women who sit in the front part of the courtroom. That must be stopped now, looking at one another of the jurors and looking at the other sitting beside them and snickering and smiling and so on. Some people think there is nothing harmful about that at all. It is apparently being done without realizing its significance. I do not want any communication, even by signs or expressions of the countenance, or anything of that kind. I am calling attention to that, not only on account of one or two members of the jury, but one or two of the people sitting in the body of the courtroom. As I say, you probably don't realize the significance of all that; but I am observing it, and I shouldn't permit it to go by without giving it some attention. You may proceed."

Counsel for appellant argues that during the trial a large number of women friends and associates of the plaintiff were present in the courtroom and that "with true feminine ardor they constantly made criticisms of witnesses, expressed in audible tones their appraisement of testimony, and by signs, and otherwise, indicated to the jury their views as to the weight of the evidence and the credibility of witnesses".

Counsel describes these women as "rooters" and argues that while the judge criticised one or two of them, it is apparent that those one or two were acting as delegates or mouthpieces for a much larger gathering. Counsel then goes on to insist that it is apparent that these "rooters" discussed the case with the female members of the jury in the ladies' rest room. Other than the admonition given by the court as above set forth there is absolutely nothing in the record to indicate that anyone with feminine ardor or otherwise, constantly or at all, made criticisms of witnesses or expressed their appraisement of testimony in audible tones, or indicated to the jury their views as to the weight of evidence or the credibility of witnesses. There is no evidence that anything done by one or two, whatever it was, was done by them as representatives of a larger number. Neither is there any evidence of any discussion between any members of the jury and others outside of the courtroom. This entire argument is based upon the incident referred to by the court, which incident counsel admits he did not see and which he does not claim to have heard. The record is silent as to what was referred to by the court other than as disclosed in the court's statement. The record shows no complaint or motion made in respect to the matter by the appellant, and we must assume that the court's warning was both heeded by the audience and accepted by the appellant as sufficient. Of necessity, considerable discretion must be allowed a trial court in handling situations that arise incident to the presence of spectators in a courtroom. In the instant case the trial judge was in a much better position to judge the nature and effect of any irregularity he observed than any appellate court. In the absence of anything more than is shown by this record, and in the absence of any objection or complaint on the part of the appellant during the course of the trial, we must assume that the trial court's handling of the situation adequately protected the interests of the appellant.

The judgment appealed from is affirmed.

Marks, J., and Jennings, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 15, 1931, and a peti-

tion by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 25, 1931.