[Civ. No. 15497. Fourth Dist., Div. Two. Apr. 13, 1976.]

FRED L. BOX, JR., a Minor, etc., Plaintiff and Respondent, v. CALIFORNIA DATE GROWERS ASSOCIATION et al., Defendants and Appellants.

## COUNSEL

James P. Cudahy and Robert T. Moulton for Defendants and Appellants.

Thomas T. Anderson and Barry Mark Regar for Plaintiff and Respondent.

## OPINION

FOGG, J.*—Libardo Gurrola, a defendant, acting within the course and scope of his employment, was driving a pickup truck owned by his employer, California Date Growers Association, another defendant, when he collided with Fred Box, Jr., a motorcyclist and the plaintiff in this action. The accident occurred on February 10, 1971, at the intersection of Jefferson Street and Avenue 56 in an unincorporated area of Riverside County.

As a result of the accident, plaintiff sustained severe injuries, including the following: (1) a fractured left arm; (2) subsequent amputation of that arm; (3) "phantom pain" in the portion of the limb that was removed; (4) a fractured left leg; (5) atrophy of that leg to the extent that it is now one inch shorter than his right leg, thus placing abnormal pressure on his back; and (6) osteoporosis of the left shoulder. A prognosis has also been made indicating that plaintiff will develop osteoarthritis because of the strain on his back.

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

At trial, plaintiff presented evidence that he was proceeding north on Jefferson Street prior to the collision and that defendant was traveling south on the same thoroughfare and was in the process of turning left onto Avenue 56 at impact.

Defendants offered evidence that Gurrola was driving south on Jefferson Street and as he approached the intersection in question, plaintiff was in the process of negotiating a wide right turn from the westbound lane of Avenue 56 onto Jefferson Street and thereupon struck the pickup as it was in the southbound lane.

A jury awarded a $600,000 verdict to plaintiff and this appeal ensued. Defendants raise several significant issues on appeal: (1) The trial court erred in denying admission into evidence of the traffic accident report and the diagram portion thereof; (2) it was error to admit several hearsay statements inasmuch as they did not come within exceptions to the hearsay rule; and (3) the court erred in allowing an accident reconstruction expert to testify as to the path and trajectory of the motorcycle after impact.

## DISCUSSION AND DISPOSITION

### Traffic Accident Report

Defendants initially contend that the trial court erroneously refused to admit into evidence a traffic accident report prepared by a California Highway Patrol officer and used at trial to refresh his recollection. They argue that since the witness was examined and cross-examined as to the content of the report, it should have been received in evidence.

In support of this contention, defendants primarily rely on section 771 of the Evidence Code.[1]  ■  Their reliance is misplaced. While section 771 allows an adverse party to inspect any writing utilized for the purpose of refreshing a witness' recollection and to introduce it in evidence, such rights are not unlimited. Indeed, it is well established that traffic accident reports are not admissible in evidence. (Veh. Code,

[1]Section 771 provides that ". . . if a witness, either while testifying or prior thereto, uses a writing to refresh his memory with respect to any matter about which he testifies, such writing must be produced at the hearing at the request of an adverse party and, unless the writing is so produced, the testimony of the witness concerning such matter shall be stricken. [¶] (b) If the writing is produced at the hearing, the adverse party may, if he chooses, inspect the writing, cross-examine the witness concerning it, and introduce in evidence such portion of it as may be pertinent to the testimony of the witness."

§ 20013; *Robinson* v. *Cable,* 55 Cal.2d 425, 429 [11 Cal.Rptr. 377, 359 P.2d 929]; *Kramer* v. *Barnes,* 212 Cal.App.2d 440, 446 [27 Cal.Rptr. 895]; *Summers* v. *Burdick,* 191 Cal.App.2d 464, 470 [13 Cal.Rptr. 68]; *Fernandez* v. *Di Salvo Appliance Co.,* 179 Cal.App.2d 240, 244-245 [3 Cal.Rptr. 609]; *Morales* v. *Thompson,* 171 Cal.App.2d 405, 407 [340 P.2d 700]; *MacLean* v. *City & County of S.F.,* 151 Cal.App.2d 133, 143 [311 P.2d 158]; *Zollars* v. *Barber,* 140 Cal.App.2d 502, 508 [295 P.2d 561]; *Hoel* v. *City of Los Angeles,* 136 Cal.App.2d 295, 309-310 [288 P.2d 989]; Title, *Police Accident Reports,* 43 State Bar J. 711, 718-719; 19 Cal.Jur.2d (rev. ed. 1969) Evidence, § 623, p. 439.)

██ Inextricably intertwined with this issue is defendants' argument that at least the diagram portion of the accident report was admissible. As defendants correctly note, the court in *Robinson* v. *Cable, supra,* 55 Cal.2d 425, allowed a diagram made by officers at the scene of the accident and a photograph thereof to be admitted into evidence *solely* for the purpose of illustrating their testimony. (*Id.,* at p. 429.) However, several major distinctions between *Robinson* and the instant controversy become apparent upon analysis. In that case, the diagram was used only to explain the officers' testimony whereas in the case under review, defendants apparently wished to use it for impeachment purposes. Secondly, and unlike this case, it is improbable that the diagram in *Robinson* was a part of the accident report inasmuch as the court criticized defense counsel for attempting to introduce such report into evidence. Furthermore, defendants elicited testimony from the officer who drew the original diagram that another exhibit depicting the scene, which was introduced into evidence, showed the same point of impact—the specific item in controversy—as was indicated in the original. Thus, the trial judge did not err in refusing admission into evidence of either the entire police report or the diagram contained therein.

*Hearsay Statements and Exceptions*

Angel Leppe, a witness to the accident, testified that Gurrola asked him if plaintiff had been killed by the collision. Leppe replied that he was uncertain of plaintiff's status. Gurrola then asked Leppe's advice on whether he should "take off" but Leppe told him to remain since "it would be worse" for him to flee the scene. After defendants thoroughly cross-examined Leppe, plaintiff called Glen Kennedy to the witness stand for the purpose of buttressing Leppe's testimony. In substance, Kennedy testified that Leppe had informed him of Gurrola's questions

within minutes after the accident. Defendants contend that allowing Kennedy to recount what Leppe had told him was inadmissible hearsay.

Plaintiff argues that Kennedy's testimony, while clearly hearsay, was admissible on either of two theories: (1) prior consistent statement, or (2) spontaneous declaration. Both theories are well established exceptions to the hearsay rule. Plaintiff premises his contention that Kennedy's testimony was admissible as a prior consistent statement under sections 1236 and 791 of the Evidence Code[2] on the fact that defendants asked Leppe on cross-examination whether he had read his deposition prior to testifying and also questioned whether he could actually comprehend Gurrola's inquiries inasmuch as they were standing 300-400 feet apart when made. While it is clear that "impeachment" will be treated as a charge of "recent fabrication" for purposes of coming within the hearsay exception, the impeachment must create an inference of such fabrication. (*Davis* v. *Tanner,* 88 Cal.App. 67, 78-79 [262 P. 1106]; Witkin, Cal. Evidence (2d ed. 1966) § 1280, pp. 1183-1184.) Defendants' cross-examination, while attacking Leppe's credibility, did not give rise to an inference of recent fabrication.

Under the spontaneous declaration exception to the hearsay rule ". . . (1) there must be some occurrence startling enough to produce . . . nervous excitement and render the utterance spontaneous and unreflecting; (2) the utterance must have been before there has been time to contrive and misrepresent, i.e., while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance; and (3) the utterance must relate to the circumstance of the occurrence preceding it. [Citation.]" (*Showalter* v. *Western Pacific R.R. Co.,* 16 Cal.2d 460, 468 [106 P.2d 895]; see also Evid. Code, § 1240.) The theory underlying this exception is that the declarant's lack of opportunity for reflection and deliberate fabrication supply an adequate assurance of the statement's trustworthiness. (*Id.*)

---

[2]A prior statement of a witness which is consistent with his present testimony is admissible if "offered in compliance with Section 791." (Evid. Code, § 1236.) Section 791 provides in part: "Evidence of a statement previously made by a witness that is consistent with his testimony at the hearing is inadmissible to support his credibility unless it is offered after:

". . .

"(b) An express or implied charge has been made that his testimony at the hearing is recently fabricated or is influenced by bias or other improper motive, and the statement was made before the bias, motive for fabrication, or other improper motive is alleged to have arisen."

In determining the existence of the essential elements of admissibility, some discretion is necessarily vested in the trial judge. (*Showalter* v. *Western Pacific R.R. Co., supra,* 16 Cal.2d 460, 469; *Ungefug* v. *D'Ambrosia,* 250 Cal.App.2d 61, 67 [58 Cal.Rptr. 223]; Witkin, Cal. Evidence (2d ed. 1966) § 546, p. 520.) This is particularly true with respect to the requirement that the statement be made while the declarant was still under the emotional stress of having observed the event to which his declaration relates. *(Ungefug* v. *D'Ambrosia, supra.)*

In the case at bench, the statements did not directly relate to the occurrence but rather to what Gurrola had said afterward. While the evidence is irrefutable that Leppe was in a state of nervous excitement at the time he related the statements to Kennedy, it is questionable whether the excitement was caused by the defendant's questions. However, even "[i]f it be assumed that the trial court, in its discretion, should not have admitted . . . [the] statement in evidence, the error was not prejudicial." (*People* v. *Costa,* 40 Cal.2d 160, 169 [252 P.2d 1].) The testimony was merely corroborative of other evidence properly in the record. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 303, p. 4286.)

In a related argument, defendants maintain that Kennedy's testimony of statements made by plaintiff at the scene of the accident was barred by the hearsay rule. Plaintiff informed Kennedy that Gurrola "turned and hit me." The trial judge apparently allowed the testimony under the spontaneous declaration exception to the hearsay rule. Kennedy arrived at the accident site within five minutes after it occurred. Defendants argue that this amount of time allowed plaintiff the opportunity to reflect and contrive a "story." However, this argument conveniently overlooks the fact that plaintiff had just been involved in a serious accident and had sustained severe injuries. Indeed, defendants have conceded, albeit in another context but also applicable here, that plaintiff was in a semi-conscious state after the collision.

Defendants also contend that plaintiff's perception of the accident was inadequate to permit the testimony. This contention is erroneously based upon plaintiff's ability to recall at the time of trial rather than on the day in question. The statement itself indicates that plaintiff's perception of the event was satisfactory. Even at trial, plaintiff's memory of the collision, *in toto,* was sufficient to allow Kennedy's testimony. Furthermore, plaintiff testified after Kennedy and defendants failed to make a motion to strike Kennedy's testimony. Thus, the trial judge did not err in allowing such evidence.

*Accident Reconstruction Expert's Opinion*

■ Defendants finally contend that the trial court committed reversible error in allowing plaintiff's accident reconstruction expert to testify as to the path and trajectory of the motorcycle after impact. We disagree.

Initially, it should be noted that defendants did not object to the competency of plaintiff's expert, Clyde Pettit. This is understandable in view of his qualifications: (1) he had been a California Highway Patrol officer for 28 years, of which the last 18 were devoted exclusively to accident analysis; (2) he had either personally investigated or supervised the investigation of 5,000-6,000 traffic accidents—many involving motorcycles; (3) he had authored several books which are used in teaching accident analysis and reconstruction at the California Highway Patrol Academy; and (4) he had taught courses concerning this subject.

Defendants place primary reliance on two 1931 decisions: *Johnston* v. *Peairs,* 117 Cal.App. 208 [3 P.2d 617] and *Fishman* v. *Silva,* 116 Cal.App. 1 [2 P.2d 473]. Both cases held that the probable course a vehicle follows after impact is not a proper subject for expert opinion. However, in *Johnston,* the purported expert was a garage mechanic and in *Fishman,* the "expert" was a tow-truck operator. Furthermore, in *Fishman,* the hypothetical question sought to be propounded was found to be deficient. Along with the fact that accident reconstruction was a relatively new field in 1931 and had not progressed to the position it presently occupies, it is unlikely that the "experts" in those decisions would be permitted to render an opinion on the same question today.

Another ". . . consideration in determining the admissibility of expert opinion evidence is whether the subject of inquiry is one of such common knowledge that men of ordinary education could reach a conclusion as intelligently as the witness or whether, on the other hand, the matter is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact. [Citations.]" (*People* v. *Cole,* 47 Cal.2d 99, 103 [301 P.2d 854, 56 A.L.R.2d 1435].)

The object of accident reconstruction is to reach satisfactory—not infallible—conclusions as to the operational factors and dynamic situation contributing to the collision. It is as impossible to reconstruct an accident with absolute accuracy as for a witness to relate precisely what occurred. Nevertheless, expert reconstruction often is more accurate than statements of witnesses. "It would not be uncommon for an expert to be

able to reconstruct the entire path of movement of the vehicle from the point of impact to the point of rest." (1 Blashfield, Automobile Law and Practice (3d ed. 1965) Investigation Sources, § 3.3, p. 42.)

The testimony in this case concerning the course the motorcycle traversed after impact was relevant in determining whether the accident could have happened in the manner alleged by defendants. After impact, the motorcycle traveled approximately 690 feet before stopping. This fact was employed in hypothetical questions asked of Pettit to emphasize the direct, rather than turning path of the motorcycle prior to the collision. Plaintiff was attempting to prove that he was northbound at approximately 60 miles per hour. The expert testimony reinforced that contention while concomitantly rebutting defendants' argument that plaintiff was turning to the right immediately before impact.

We recognize that certain indefinite factors may enter into the determination of the course of vehicles after an impact but these are relevant to the weight of an expert's opinion rather than its admissibility if a proper foundation has been laid. In this case, Pettit based his opinions on a consideration of the following factors: (1) the distance traveled by the motorcycle after the collision; (2) the point of rest of plaintiff's body; (3) the type of damage to the left front fender of the pickup truck; (4) an examination of the same make and model of motorcycle; and (5) an inspection of the accident scene. The foregoing constituted sufficient grounds upon which to predicate an opinion as to the path of the motorcycle after impact. Furthermore, the attack on this aspect of the expert's opinion seems futile at this point inasmuch as it was not the only evidence introduced consistent with plaintiff's theory of the manner in which the accident occurred. Indeed, there was a plethora of other evidence supporting the same conclusion.

The judgment is affirmed.

Gardner, P. J., and McDaniel, J., concurred.