The defendant was convicted after a jury trial of negligent homicide with a motor vehicle, in violation of General Statutes 53a-58a. The issues raised by the defendant in this appeal involve the constitutionality of that statute, the admissibility of certain *Page 428 
evidence, the adequacy of the instructions to the jury and the denial of his motion for a judgment of acquittal.[1]
The factual situation may be summarized as follows: The defendant, who was sixteen years old, was operating a motor vehicle northbound on Pocono Road in Brookfield at about 4 p.m. on March 7, 1979. The occupants of the vehicle had attended a party and the defendant was driving the decedent home. The road was posted with speed limit signs of twenty-five miles per hour for northbound traffic, and the surface was generally dry, although there were some wet areas. After passing through one such wet area the vehicle crossed the center line, proceeded back into the northbound lane, left the traveled portion of the roadway and went onto the east shoulder where it skidded broadside and struck a utility pole. The decedent, who was seated in the middle of the rear seat, sustained serious injuries and was taken to the hospital where she died on March 9, 1979. The police conducted an extensive investigation and tests which revealed that the defendant had been driving unreasonably fast. Thereafter, the defendant was charged with negligent homicide with a motor vehicle.
 I
The first claim of error, the constitutionality of General Statutes 53a-58a,[2] involves the very *Page 429 
essence of the defendant's conviction. The four arguments underlying this claim are that the statute (1) is void because it creates an unreasonable and arbitrary classification; (2) is void for vagueness; (3) violates the constitutional guaranty of separation of powers; and (4) violates the constitutional prohibition against ex post facto laws.
 A
By arguing that the statute herein creates an unreasonable and arbitrary classification, the defendant has raised an equal protection claim.[3] At the outset of every such claim the court must determine the standard of review by which the challenged classification must be judged. The principles governing the traditional "two-tier" equal protection analysis are well settled: legislative classifications involving either fundamental rights or suspect classes must be struck down unless justified by a compelling state interest, while most other classifications will withstand constitutional attack if the legislative distinction is founded on a rational basis. Leech v. Veterans' Bonus Division Appeals Board, 179 Conn. 311,313, 426 A.2d 289 (1979); Laden v. Warden,169 Conn. 540, 542-43, 363 A.2d 1063 (1975).
Since the advent of motor vehicles, regulations involving travel upon public highways and the use of vehicles upon these highways have been upheld as a valid exercise of the state's police power; Silver v. Silver, 108 Conn. 371, 377, 143 A. 240
(1928), aff'd, 280 U.S. 117, 50 S.Ct. 57,74 L.Ed. 221 (1929); and this is still the law today. See Gentile v. Altermatt, 169 Conn. 267, 300, *Page 430 363 A.2d 1 (1975), appeal dismissed, 423 U.S. 1041,96 S.Ct. 763, 46 L.Ed.2d 631 (1976). Furthermore, a court applying an equal protection analysis must uphold police power legislation that serves to promote the public health, safety or morals in a reasonable manner. Amsel v. Brooks, 141 Conn. 288, 294-95,106 A.2d 152, appeal dismissed, 348 U.S. 880, 75 S.Ct. 125,99 L.Ed. 693 (1954); Silver v. Silver, supra, 378; accord, Opinion of the Justices, 368 Mass. 824,827, 333 N.E.2d 385 (1975).
The defendant contends that 53a-58a creates an unreasonable classification by predicating guilt upon the consequences of a motor vehicle accident, that is, whether death resulted, rather than upon the conduct which caused this accident. We are not persuaded by this argument, however, and agree with the trial court that this statute clearly bears a rational relationship to the preservation and promotion of the public welfare, by protecting the public from motorists who operate vehicles negligently and thereby cause death on the highway. See generally State v. Ashton, 175 Han. 164, 170-71, 262 P.2d 123 (1953).
 B
The defendant's second attack on 53a-58a is that it is unconstitutionally vague and results in a denial of due process. Such an attack involves two separate but connected inquiries: (1) whether the statute provides fair warning of its effect and (2) whether it provides guidelines for nondiscriminatory law enforcement. smith v. Goguen, 415 U.S. 566, 572-73,94 S.Ct. 1242, 39 L.Ed.2d 605 (1974).
The fair warning principle has been developed in a long line of United States Supreme Court cases, as noted by our own Supreme Court in State v. Pickering, 180 Conn. 54, 428 A.2d 322 (1980). "[A]s a matter of due process a penal statute must be sufficiently definite to enable a person to know what conduct he must avoid." Id., 59-60. This principle does not *Page 431 
automatically prohibit statutes which are general in nature and which proscribe a wide range of conduct, however, since the constitution requires no more than a reasonable degree of certainty. State v. Chetcuti, 173 Conn. 165, 167,377 A.2d 263 (1977); accord, United States v. National Dairy Products Corporation, 372 U.S. 29, 32-33,83 S.Ct. 594, 9 L.Ed.2d 561 (1963). The question presented, therefore, is whether 53a-58a, which punishes "the negligent operation of a motor vehicle (which] causes the death of another person," conveys a sufficiently definite warning of the proscribed conduct.
Where the first amendment is not involved, the claim of vagueness is tested by the facts applicable to the particular defendant. State v. Pickering, supra, 57. In the bill of particulars, the state indicated that the charge of negligence was based upon the defendant's operation of a motor vehicle at a speed greater than was reasonable, having regard to the width, traffic and use of the highway or road, and to the weather conditions, in violation of General Statutes 14-218a.
Negligence has long been defined as "the failure to use that degree of care for the protection of another that the ordinarily reasonably careful and prudent man would use under like circumstances." Temple v. Gilbert, 86 Conn. 335, 340, 85 A. 380
(1912). The requisite degree of care here was determined by 14-218a: operating a motor vehicle at a speed that is reasonable to the conditions of the roadway. In this regard, the presence of posted speed limit signs provided unambiguous notice of the degree of care to be exercised. See generally State v. Gordon, 144 Conn. 399, 402,132 A.2d 568 (1957). Thus, we hold that 53a-58a is not void for vagueness. Accord, State v. Ashton, supra, and cases cited therein; note, 12 A.L.R.2d 580. Furthermore, our conclusion that 53a-58a
provides fair warning of the proscribed conduct *Page 432 
undermines the defendant's argument that the statute is incapable of nondiscriminatory enforcement.[4]
As a final corollary to his void for vagueness argument, the defendant contends that 53a-58a is unconstitutional because it fails to include an element of intent. This argument is inapplicable, however, to statutes which regulate conduct under the police power. Statutes regulating the operation of motor vehicles are clearly within the class of police power legislation the violation of which can support a conviction regardless of intent. State v. Calhoun, 1 Conn. Cir. Ct. 174, 177, 23 Conn. Sup. 198, 179 A.2d 837 (1962); State v. Salone, 1 Conn. Cir. Ct. 99, 106, 22 Conn. Sup. 482,174 A.2d 803 (1961). Hence, we find no vagueness based upon lack of intent.
 C
The defendant also argues that 53a-58a violates the constitutional guaranty of the separation of powers among the legislative, judicial and executive branches of government. Conn. Const., art. II.[5] *Page 433 
He claims that this statute is unconstitutional because in it the legislature has delegated its primary responsibility for standard-setting to the judiciary. This claim is not purely one of delegation of legislative power, however, for it incorporates the defendant's earlier argument regarding the statute's alleged vagueness. See, e.g., State v. Smith, 183 Conn. 17, 23, 438 A.2d 1165 (1981).
In enacting 53a-58a, the legislature established primary standards for carrying out its intent to protect the public from negligent motorists. The crime of negligent homicide has three elements: (1) the death of a person; (2) by the instrumentality of a motor vehicle; (3) which is operated in a negligent manner. The third element, negligence, has been previously defined. See Temple v. Gilbert, 86 Conn. 335, 340, 85 A. 380
(1912). Thus, the statute gives fair notice of conduct whose primary standards are clearly delineated by the legislature. Our conclusion that the statute is neither vague nor an impermissible delegation of legislative power constrains us to reject this claim.
 D
The defendant's final constitutional attack is that 53a-58a violates the provision of the United States constitution against ex post facto laws because it permits the judicial factfinder, in retrospect, to define criminal conduct subjectively.[6] We disagree. The rejection of this claim involving another statute by our supreme Court; State v. Smith, supra, 23-24; and our previous conclusion that 53a-58a does not permit a subjective definition of the proscribed conduct, lead us to reject the defendant's ex post facto claim. *Page 434 
 II
The defendant's next claims of error concern the admissibility of various portions of the state's evidence.
 A
At trial, the defendant objected to the testimony of a police officer regarding the presence of two twenty-five miles per hour speed limit signs along Pocono Road as irrelevant and inadmissible. We disagree.
As noted previously, the state in its bill of particulars alleged that it would prove the necessary element of negligence by showing a violation of 14-218a.[7] The defendant sought to challenge the prima facie evidence under the statute by introducing evidence that the speed limit actually approved by the commission was thirty miles per hour, rather than the speed that was posted. He argues that he introduced evidence that the signs were not properly posted and authorized, and that this rebutted the presumption that the signs stated the maximum reasonable rate of speed. He concludes, therefore, that the speed limit stated on the improperly posted sign is irrelevant to the issue of whether he was operating at an unreasonable rate of speed.
We disagree with the defendant's contention that he introduced evidence that would rebut the statutory presumption, since the exhibits he attempted to introduce for this purpose were marked for identification only. We conclude, therefore, that the court properly admitted the officer's testimony that the posted limit was twenty-five miles per hour. This *Page 435 
testimony was clearly relevant because it tended to establish a fact in issue; Federated Department Stores, Inc. v. Board of Tax Review, 162 Conn. 77,82, 291 A.2d 715 (1971); namely, whether the defendant was negligent in traveling at an unreasonable rate of speed.[8] Having so ruled, the trial court's denial of the defendant's motion to strike was also proper.
 B
The defendant's next claim is that the posted speed limit standard of negligence established by14-218a does not apply to minors without an additional showing that such speed was unreasonable in light of the youth's age, intelligence, maturity and experience. The identical claim was addressed by our Supreme Court in Mahon v. Heim, 165 Conn. 251, 256-57,332 A.2d 69 (1973). In that case the court noted that in the field of statutory negligence, where the violation of a statute constitutes negligence per se, the legislature has recognized the need for holding minors to a less demanding standard of care than that of adults. This recognition led to the enactment of General Statutes 52-217, which makes it a question of fact whether a minor under the age of sixteen was in the exercise of due care when he violated a statutory duty.[9] Since it is uncontroverted that this defendant was above the age of sixteen at the time the accident occurred, the court properly applied the adult standard of care to him, as provided in 14-218a. *Page 436 
C
The defendant also objected to the introduction of a sketch of the accident scene that was prepared by a detective with the assistance of other police officers. This evidence was offered merely as a record of the length of skid marks that were found, and not as to their scale or position. The defendant claims that this document was inadmissible because it constituted hearsay that did not come within the business record exception, that it included opinion testimony and that it was prepared for the purpose of litigation.
For a record to be admissible under the statute; General Statutes 52-180; it must meet three qualifications: (1) it must be made in the regular course of business; (2) it must be the regular course of business to make such record; and (3) it must be made at or near the time of the act, transaction or event. Szela v. Johnson Motor Lines, Inc., 145 Conn. 714, 723, 146 A.2d 910
(1958). "`[T]he mere fact that a record is generally admissible . . . [under the statute] does not mean that anything and everything contained in the record is necessarily admissible in any given case. Maggi v. Mendillo, 147 Conn. 663,667 [165 A.2d 603 (1960)]; General Motors Acceptance Corporation v. Capitol Garage, Inc.,154 Conn. 593, 597 [227 A.2d 548 (1967)]. To be admissible, the record must be one based on the entrant's own observation or upon information of others whose duty it is to transmit it to him, all of whom must be members of the organization whose record it is. D'Amato v. Johnston, 140 Conn. 54,60 [97 A.2d 893 (1953)]." State v. Anonymous (1974-2), 31 Conn. Sup. 510, 514, 320 A.2d 882 (1974).
Applying these standards to the present case leads us to conclude that the sketch was properly admitted.[10] Documentary evidence such as maps *Page 437 
are admissible in the discretion of the court even though not drawn to scale nor portraying the locus with complete accuracy; State v. Piskorski,177 Conn. 677, 727, 419 A.2d 866, cert. denied,444 U.S. 935, 100 S.Ct. 283, 62 L.Ed.2d 194 (1979); and this principle applies equally to the sketch in the present case.[11]
We conclude that the court was correct in allowing the exhibit into evidence and in refusing the defendant's motion to strike it. Further, it properly charged the jury that the sketch could be used only for determining the length of the skidmarks.
 D
The defendant also objected to the introduction into evidence of two overlays depicting the path of the vehicle at the accident scene.[12] The only grounds of error on review are (1) whether these exhibits constituted improper expert opinion and hearsay and (2) whether an adequate foundation existed for an out-of-court experiment that was utilized in preparing these overlays.[13]
The principles governing the admissibility of expert testimony were recently stated by our Supreme Court in State v. Wallace, 181 Conn. 237,241, 435 A.2d 20 (1980): "Whether a witness is qualified to testify as an expert is a matter largely within the trial court's discretion. Oborski v. New Haven Gas Co., 151 Conn. 274, *Page 438 
280, 197 A.2d 73 (1964). While it is true that preliminary facts must be shown to lay a foundation for the witness' qualifications, there is no precise rule as to what those facts must be. Oborski v. New Haven Gas Co., supra. Expertise may come from practical experience or study alone. Bryan v. Branford, 50 Conn. 246, 248 (1882). In any event, if reasonable qualifications are established, objections go only to the weight to be given to the witness' opinion rather than to its admissibility. Oborski v. New Haven Gas Co., supra." Thus, the determination of whether Carroccio was qualified as an expert was within the discretion of the court; Oborski v. New Haven Gas Co., supra; Holden Daly, Connecticut Evidence 118(a); and we find no abuse of that discretion.
The defendant's final argument under this claim of error concerns the reliance by this expert on both the police report and on an out-of-court "experiment" in the preparation of the overlays.[14] The defendant argues that the police report constituted inadmissible hearsay and thus provided an insufficient foundation for the witness' opinion regarding the vehicle's path. Although this reasoning has been followed by some courts, the accepted principle followed in Connecticut and other jurisdictions is that "an expert's testimony may be based on reports of others if the reports are those customarily relied on by such an expert in formulating an opinion." State v. Cosgrove, 181 Conn. 562, 584, 436 A.2d 33 (1980).
Although Cosgrove involved a medical expert, its reasoning is equally applicable. to cases involving other types of experts. "If some of the expert's factual information is derived from sources fairly trustworthy though hearsay and he has as such the ability to co-ordinate and evaluate that information with all the other facts in his possession secured through personal observation, the trial court may in the exercise *Page 439 
of a sound discretion permit the expert's ultimate opinion to be considered by the jury." Warren v. Waterville Urban Renewal Authority, 235 A.2d 295,300 (Me. 1967), cert. denied, 390 U.S. 1006,88 S.Ct. 1249, 20 L.Ed.2d 105 (1968), citing Vigliotti v. Campano, 104 Conn. 464, 465,133 A. 579 (1926) (expert testimony regarding prevailing rate of wages); see McCormick, Evidence (2d Ed.) 15.
Our conclusion that the court properly admitted this testimony is supported by the better reasoned authorities, which favor the admissibility of expert opinion that is partly derived from written sources. See, e.g., Jenkins v. United States,307 F.2d 637, 641 (D.C. Cir. 1962); 2 Wigmore, Evidence (Chadbourne Rev. 1979) 665(b).[15] We conclude, therefore, that "when the expert witness has consulted numerous sources, and uses that information, together with his own professional knowledge and experience, to arrive at his opinion, that opinion is regarded as evidence in its own right and not as hearsay in disguise." United States v. Williams, 447 F.2d 1285, 1290
(5th Cir. 1971), cert. denied, 405 U.S. 954,92 S.Ct. 1168, 31 L.Ed.2d 231 (1972).
 E
The defendant has also objected to the testimony of Trooper Baron of the Connecticut state police concerning the coefficient of friction of Pocono Road that *Page 440 
he calculated by applying a scientific formula to the results of out-of-court skid tests. This calculation was subsequently used in a minimum speed formula to calculate the vehicle's speed, and formed the basis for the trooper's conclusion that the defendant has been driving unreasonably fast.[16]
The rule in Connecticut is that an expert may testify as to the speed of a motor vehicle based on skid marks and other physical factors. Thomas v. Commerford, 168 Conn. 64, 69, 357 A.2d 476
(1975). Before this testimony is admissible, however, a foundation must be established that the witness knew how to calculate the speed on the basis of certain physical laws or formulas, such as those relating to the coefficient of friction.[17] Note, 29 A.L.R.3d 248, 253 2 [6]. This is a well recognized principle that has gained general acceptance in the field of accident reconstruction; 1 Lacy Barzelay, Scientific Automobile Accident Reconstruction (1974) pp. 4-2 through 4-86; 1 Blashfield, Automobile Law and Practice (3d Ed. 1965) 3.3, pp. 39-41; and is a permissible subject for expert testimony in Connecticut. Lutkus v. Kelly, 170 Conn. 252,256-57, 365 A.2d 816 (1976); Floyd v. Fruit Industries, Inc., 144 Conn. 659, 664-65,136 A.2d 918 (1957). See generally Box v. California Date Growers Assn., 57 Cal.App.3d 266, 274-75,129 Cal.Rptr. 146 (1976) (opinions of accident reconstruction experts based on observations of scene and mathematical computations based on *Page 441 
laws of physics are admissible); Ohio Valley Construction Co. v. Dew, 354 A.2d 518, 523
(D.C.App. 1976). Accordingly, we reject the defendant's claim that the state did not establish a sufficient foundation for this witness to testify about the coefficient of friction and its use in calculating the vehicle's speed.[18]
The defendant also claims the court erred by admitting evidence of the skid tests that the witness used in determining the coefficient of friction and calculating the vehicle's speed. Specifically, he argues that these tests would not result in a fair and accurate reproduction of the accident because the witness did not consider all the variables that would affect the results.
The admissibility of evidence of out-of-court experiments or tests rests in the sound discretion of the trial court and will not be interfered with on appeal absent proof that this discretion was abused. State v. Vennard, 159 Conn. 385, 395-96,270 A.2d 837 (1970), cert. denied, 400 U.S. 1011,91 S.Ct. 576, 27 L.Ed.2d 625 (1971); 29 Am.Jur.2d, Evidence 818, p. 909. "As a concomitant of this principle, the question of the similarity of conditions prevailing at the time of the experiment or test to those which prevailed at the time of the occurrence in question is one that lies within the sound discretion of the trial court, to be decided in the light of all the surrounding facts and circumstances." 29 Am.Jur.2d, Evidence 818. Applying these standards to the present case, we find nothing in the record to indicate that the court abused its discretion in admitting evidence of these skid tests. The conditions prevailing during these tests were *Page 442 
substantially similar to the actual conditions,[19]
and the defendant has not made the required showing that the variations he alleges were likely to confuse or mislead the jury. 29 Am.Jur.2d, Evidence 824.
A closely related claim involves the admissibility of hypothetical questions that were used to elicit the trooper's opinion as to whether the defendant's car caused the skid marks that were measured at the accident scene, as well as to elicit his testimony concerning the speed of the defendant's vehicle at the commencement of the skid. In arguing that the court erred in admitting these questions over his objection, the defendant contends that the questions were improper because they assumed as true the very facts in issue and certain facts that were not proved to be true.
In assessing the defendant's claim we are guided by the following standards: "The determination of the admissibility of a hypothetical question . . . is not to be made by the application of any rule of thumb. Goodrich Oil Burner Mfg. Co. v. Cooke,126 Conn. 551, 554, 12 A.2d 833 [1940]. Rather, it calls for the exercise of a sound discretion as to whether the question, even though it does not contain all of the facts in evidence, presents the facts in such a manner that they bear a true and fair relationship *Page 443 
to each other's and to the whole evidence in the case; Barber's Appeal, 63 Conn. 393, 409, 27 A. 973 (1893]; Jackson v. Waller, 126 Conn. 294, 306, 10 A.2d 763
(1940]; is not so worded as to be likely to mislead or confuse the jury; and is not so lacking in the essential facts as to be without value in the decision of the case. Goodrich Oil Burner Mfg. Co. v. Cooke, supra; Johnson v. Toscano, 144 Conn. 582, 591,136 A.2d 341 [1957]." Floyd v. Fruit Industries, Inc., 144 Conn. 659, 666, 136 A.2d 918 (1957).
Applying these standards to the detailed hypothetical questions that were asked concerning the skid marks and the estimated speed of the vehicle, we conclude that the court did not abuse its discretion in allowing these questions to be answered. The considerations that the defendant claimed rendered these questions improper, such as the effect of the damage to the vehicle, its travel over surfaces of varying coefficients of friction and the effect of locked wheel skid marks, could all have been raised by the defendant in his cross-examination of the witness "to test the skill, learning and accuracy of the expert or to ascertain the reasonableness or expose the unreasonableness of his opinion." Cecio Bros., Inc. v. Feldmann, 161 Conn. 265, 274, 287 A.2d 374
(1971). Furthermore, in light of our conclusion that there was no abuse of discretion in admitting these questions, the claim that they assumed facts that were in issue and not proved goes only to the weight of the opinion and not to its admissibility. Pischitto v. Waldron, 147 Conn. 171, 177,158 A.2d 168 (1960).[20] *Page 444 
 F
The remaining claims of error involve the court's charge to the jury regarding expert witnesses, the proper standard of care and the effect of prima facie presumptions.
A number of standards exist which govern the review of a challenged jury charge. "A charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement . . . ." Amato v. Desenti, 117 Conn. 612,617, 169 A. 611 (1933). "We examine the charge to see if it fairly presents the case to the jury . . . and not with [a] legal microscope, to search for technical flaws. . . ." Pratt, Read Co. v. New York, N.H. H.R. Co.,102 Conn. 735, 741, 130 A. 102 (1925). Although a charge may not be exhaustive, perfect or technically accurate, it will ordinarily be sustained if it is correct in law, adapted to the issues and sufficient for the guidance of the jury. Castaldo v. D'Eramo, 140 Conn. 88, 94,98 A.2d 664 (1953); Maltbie, Conn. App. Proc. 76.
The expert witness charge is challenged because of the court's alleged failure (1) to consider the effect of the experts' reliance on various trial exhibits in forming their opinions; (2) to delineate the specific subordinate facts that were assumed in the hypothetical questions; (3) to instruct that these subordinate facts must be proved.
We acknowledge that where the opinion testimony of an expert witness is based upon exhibits prepared by others and not upon firsthand knowledge, or is by way of answer to a hypothetical question premised upon an assumed state of facts, there is an increased danger that the jury will attach undue weight to the testimony. Nash v. Hunt,166 Conn. 418, 426, 352 A.2d 773 (1974); cf. 31 Am.Jur.2d, Expert and Opinion Evidence 39, 181. These dangers are mitigated in the present case, however, since the opinions of experts *Page 445 
Carroccio and Baron were based on their own personal observations, as well as by reference to the exhibits. Furthermore, the court specifically instructed the jury that the exhibits should merely be used to illustrate the testimony that was heard. Additionally, the court in its charge concerning hypothetical questions properly instructed the jury that they must reject the opinion of an expert witness to the extent that it is based on subordinate facts which they do not find proved. Nash v. Hunt, supra, 426; Pischitto v. Waldron, supra, 177. Lastly, although the court instructed the jurors to recall the facts that were given in the assumption part of each hypothetical question, it failed to delineate specifically the subordinate facts. Reading the charge as a whole, however, as we must do; State v. Harris, 172 Conn. 223, 227, 374 A.2d 203
(1977); and applying the governing standards, we hold that although the charge could have been more complete, it sufficiently instructed the jury on the law in question. See, e.g., Gosselin v. Perry,166 Conn. 152, 162-63, 348 A.2d 623 (1974).
The defendant also objected to the jury charge concerning the negligence of the minor criminal defendant and requested a charge stating that the defendant's minority was relevant to the issue of negligence per se. As noted previously, however, the defendant was properly held to an adult standard of care. General Statutes 52-217,14-218a.[21]
The defendant also challenges the court's statutory negligence charge concerning the legal effect of the prima facie presumptions contained in General Statutes14-218a. The defendant claims that the charge, as given, left the jury with the inference that *Page 446 
any credible evidence that his speed exceeded the posted limits required them to find that he was negligent. The court correctly stated several times, however, that such prima facie evidence permits, but does not mandate, an inference of liability; Mott's Super Markets, Inc. v. Frassinelli, 148 Conn. 481, 489, 172 A.2d 381
(1961); Ryan v. Lilley Co., 121 Conn. 26, 30,183 A. 2 (1936); and that this factor should be considered in light of all the circumstances. Accordingly, we find absolutely no merit in this claim upon our review of the record.
 G
Finally, the defendant claims that there was insufficient evidence to warrant his conviction for negligent homicide with a motor vehicle. He moved for a judgment of acquittal which was denied. Our Supreme Court recently restated the test for ruling upon such a motion in State v. Stankowski, 184 Conn. 121, 126, 439 A.2d 918, cert. denied, 454 U.S. 1052, 102 S.Ct. 596,70 L.Ed.2d 588 (1981). "[T]he issue is whether the jury could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify the verdict of guilty beyond a reasonable doubt . . . ." Id., quoting State v. Gaynor, 182 Conn. 501, 503,438 A.2d 749 (1980), and State v. Festo, 181 Conn. 254,259, 435 A.2d 38 (1980). "In ruling on such a motion, the evidence presented at the trial must be given a construction most favorable to sustaining the jury's verdict." State v. Stankowski, supra, quoting State v. Jackson,176 Conn. 257, 262, 407 A.2d 948 (1978). "Each essential element of the crime charged must be established by proof beyond a reasonable doubt, and although it is within the province of the jury to draw reasonable, logical inferences from the facts proven, they may not resort to speculation and conjecture." State v. Stankowski, supra, quoting State v. Gaynor, supra. *Page 447 
Applying this test, we find that there was sufficient testimony for the jury to conclude that at the time of the accident the speed of the defendant's vehicle was approximately twice that of the posted speed limit.
 There is no error.
In this opinion SHEA and BIELUCH, Js., concurred.