EDWARD H. NASH, JR. *v.* VINCENT G. HUNT ET AL.

CARL HUNT ET AL. *v.* GEORGE HOXIE

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, Js.

Argued April 4—decision released June 4, 1974

*Walter M. Pickett, Jr.,* for the appellant (defendant Hoxie) in each case.

*John A. Mettling,* for the appellees (plaintiffs) in the second case.

*Carmine R. Lavieri,* with whom, on the brief, were *Frank H. Finch, Jr.,* and *David M. Cusick,* for the appellee (plaintiff) in the first case.

*Joseph P. Kenny,* for the appellees (named defendant et al.) in the first case.

House, C. J. These actions arose out of an automobile collision at a highway intersection in the town of Winchester. The cases were tried together to a jury and, by stipulation, they were consolidated

for appeal. Practice Book § 606. The collision occurred between a 1964 Pontiac sedan owned and operated by the defendant, George Hoxie, in which the plaintiff, Edward H. Nash, Jr., was a passenger, and a 1934 Plymouth sedan operated by the defendant Carl Hunt and owned by the defendant Vincent G. Hunt. The plaintiff Nash brought suit against both the defendant Hoxie and the defendants Hunt, alleging in his complaint as amended that the collision and his injuries were caused by their negligence. As plaintiffs, Carl Hunt and his father, Vincent Hunt, brought suit against the defendant Hoxie, alleging that the plaintiff Carl's injuries and the expenses incurred by the plaintiff Vincent were caused by the defendant Hoxie's negligence. In the complaints, it was alleged, inter alia, that the defendant Hoxie was negligent in that he was operating his automobile at an unreasonable and excessive speed, and the question as to the speed of the defendant Hoxie's car was an important issue at the trial.

In the suit brought by the plaintiff Nash against the defendants Hunt and the defendant Hoxie, the jury returned a verdict in his favor against the defendant Hoxie, awarding him $50,000 in damages, but in the same verdict found in favor of the defendants Hunt. The defendant Hoxie's motion to set aside the verdict was denied and judgment was rendered on the verdict. In the second action, the jury found the issues for the plaintiffs Hunt and likewise awarded them $50,000 in damages against the defendant Hoxie. The defendant Hoxie's motion to set aside this verdict was conditionally granted, and a new trial ordered solely on the issue of damages unless the plaintiffs Hunt stipulated that judg-

ments for $25,000 and $2823.67, respectively, be rendered for them. The stipulation and remittitur were filed by the plaintiffs Hunt and judgment rendered accordingly. From the judgments in both actions the defendant Hoxie has appealed.

The defendant Hoxie assigns error in the refusal of the trial court to set aside the verdicts against him in both actions, asserting that they are not supported by the evidence on the issue of liability, that despite the remittitur in the Hunt suit, the judgment in that case in favor of the plaintiff Carl Hunt is still excessive, that the court erred in admitting into evidence certain medical bills, and that the court erred in its charge to the jury concerning the credibility of witnesses and the weight to be given to their testimony, particularly with respect to the testimony of an expert witness produced by the plaintiffs Hunt. Other claims of error have either been abandoned or, in the view which we take of the consolidated appeals, do not require discussion.

The plaintiff Nash and the Hunts offered evidence to prove and claimed to have proved the following facts: On March 9, 1969, the defendant Hoxie's automobile was traveling in a generally westerly direction on route 44, and the Hunt automobile was traveling in a generally southerly direction on Pinney Street. At the intersection of route 44 and Pinney Street, there was a stop sign and a stop line on Pinney Street north of route 44. Prior to the collision, Carl Hunt had stopped at the stop line on Pinney Street at the intersection, saw no traffic in either direction and proceeded to turn left in an easterly direction on route 44. From the stop line, Carl Hunt could see to the corner of a curve of

route 44 to the east, a distance of approximately 500 feet. The Hunt vehicle was struck in the left front and the point of collision was approximately in the middle of the intersection. The collision caused the Hunt vehicle to move 104 feet from the point of impact up route 44 in a westerly direction before coming to rest. The Hoxie automobile left wiggly, uneven skid marks for approximately 144 feet from where they began to the point of impact.

During the trial, Officer Jules L. Bunel, of the Winchester police department, who investigated the accident, testified that, on the basis of his investigation at the scene, of paint found on the highway surface and of damage to the top and sides of the vehicle, he believed that the Hunt automobile overturned after the impact. Subsequently, the plaintiff Hunt produced as a witness a safety engineer, Alexander N. Chapman, and questioned him for the purpose of qualifying him as an expert witness. During this inquiry Chapman testified as to his educational background and experience and the existence of physics formulae by the application of which he could determine the speed at which the Hoxie car was being operated at the time of the collision. He testified that, based on the skid marks alone, it was his opinion that the car was going 56 miles per hour before it started to skid. He also testified that by the application of two accepted scientific formulae he could determine, from the distance which the Hunt car was "pushed" from the point of impact, the speed of the Hoxie car at the moment of impact. Referring to the earlier testimony of Officer Bunel that it was the officer's opinion as a result of his on-the-scene investigation that the Hunt car had rolled over after the impact, the court inquired of Chapman whether it would

make a difference in his opinion as to speed if the Hunt car had not been pushed all the way but had rolled over. The witness responded: "That could make a difference, if it rolled over." At the conclusion of the preliminary inquiry, the court ruled that Chapman qualified as an expert witness, and he was permitted to testify as to the opinions which he had expressed. Regarding the specific question as to Chapman's opinion of the speed of the Hoxie car calculated upon the distance which the Hunt car had been "pushed," the court stated out of the presence of the jury: "I will allow it [the question] on the basis of, at the moment, if they find that the car didn't roll over that the—that the car rolled over, then they are to disregard any estimate of speed based upon this particular question." Thereafter, Chapman was permitted to tell the jury that he had determined by the application of the two scientific formulae that at the point of impact the speed of the Hoxie car was 72 miles an hour.[1]

In answer to a hypothetical question,[2] Chapman was also permitted to state that in his opinion the Hunt car did not roll over.

---

[1] The witness explained to the jury how he made the determination: "The energy required to push or shove the Plymouth the 104 feet would be 249,600 pounds of energy or known as Kips, energy expended by the Pontiac. Now, taking that 249,600 pounds of energy we translate that into the speed that a 3700 pound vehicle would have to be going in order to exert that much energy, and that comes out at 45 miles an hour, but you cannot add the 45 and 56. You must square those. In other words, you square 56 plus the square of the 45, and take the square root of that, and you come up with 72 and, instead of 90, you just don't add the two together."

[2] "Q. That is, assuming that that picture is car # 2 in Nash's Exhibit # 1. That is the police sketch. And assume furthermore, and pointing to Hunt's Exhibit # 19, that the Hunt vehicle came out of Pinney Street into route 44, and assume, if you will, and—

The defendant Hoxie's counsel made all necessary objections and took proper exceptions to the court's rulings as to Chapman's qualifications as an expert and to his opinion testimony.

Despite the court's statement during the preliminary inquiry in the absence of the jury that it would permit Chapman to inform the jury of his opinion as to the speed of the Hoxie car predicated upon the distance the Hunt car was "pushed" but would instruct the jury that if they found that the Hunt car in fact rolled over, then they were to disregard the estimate of speed based on how far the car was pushed, the court did not give the jury such an instruction. The only instruction given to the jury with respect to the testimony of expert witnesses was a statement in the opening portion of its charge: "It is for you to determine the credibility of all witnesses whether experts in their specialized field or not, and the weight to be given their testimony." At the conclusion of the charge, Hoxie's counsel in taking exceptions expressly questioned the adequacy of the charge with regard to the testimony of expert witnesses, stating: "And finally—and I may have missed this, may it please the Court—whether or not Your Honor instructed the jury as to the basis upon which to judge expert testimony. In other words, that they could keep—that they could accept

vehicle # 1, the Hoxie vehicle, came from the east toward the west—toward Pinney Street, and assume further that there was an accident in that intersection, and assume further that you don't know whether this car # 2, the Plymouth was moving or not, but assuming further that that car was 104 feet westerly of the point of impact, and assume that there were 144 feet of tire marks prior to the point of impact, based on those assumptions and looking at that photograph of the Nash car taken at the scene of the accident, the night of the accident, do you have an opinion based on—opinion with regard to whether or not that car rolled or tipped over?"

certain portions and not others and the matter of determining whether or not an expert should be judged by the normal rules of credibility of witnesses." The court replied: "I mentioned that at the beginning."

" 'The determination of the qualification of an expert is largely a matter for the discretion of the trial court.' *Coffin* v. *Laskau,* 89 Conn. 325, 329, 94 A. 370; *Oborski* v. *New Haven Gas Co.,* 151 Conn. 274, 280, 197 A.2d 73. The trial court's decision is not to be disturbed on appeal 'unless that discretion has been abused, or the error is clear and involves a misconception of the law.' 31 Am. Jur. 2d 531, Expert and Opinion Evidence, § 31." *Siladi* v. *McNamara,* 164 Conn. 510, 513, 325 A.2d 277. We find no abuse of discretion or error in the ruling of the trial court that Chapman was qualified to testify in these cases as an expert witness.

We conclude, however, that the court did not adequately instruct the jury as to how they should consider and weigh the testimony of Chapman as an expert witness. His testimony, unlike that of the other witnesses, was not as to facts of which he had knowledge but as to his opinion based upon his expertise and upon facts which he was asked to assume by way of a hypothetical question. It was not sufficient merely to inform the jury that it was their function to determine the credibility of all witnesses alike, expert or nonexpert, and to determine the weight to be given to their testimony. They should have been instructed as to the factors which they should consider in weighing the opinion testimony of the expert witness and cautioned that his answer to the hypothetical question would have value only insofar as they found the facts assumed

in the question upon which the opinion was based to have been proved. See e.g., *Graybill* v. *Plant,* 138 Conn. 397, 402, 85 A.2d 238; see also *Pischitto* v. *Waldron,* 147 Conn. 171, 177, 158 A.2d 168.

"The jury are not obliged to accept the ultimate opinion of an expert witness. If, for example, they do not find him a credible witness, they will reject his opinion regardless of whether they believe or disbelieve the subordinate facts on which the opinion is based. *Sibley* v. *Middlefield,* 143 Conn. 100, 108, 120 A.2d 77; *Floyd* v. *Fruit Industries, Inc.,* 144 Conn. 659, 667, 136 A.2d 918; *Livingstone* v. *New Haven,* 125 Conn. 123, 127, 3 A.2d 836. And the jury must reject the opinion of an expert to the extent that it is based on subordinate facts which they do not find proven. *Floyd* v. *Fruit Industries, Inc.,* supra, 666; 20 Am. Jur. 668, § 796." *Van Detti* v. *Parsons Bros., Inc.,* 146 Conn. 282, 286, 150 A.2d 200. Where, as here, the opinion testimony of an expert witness is based upon exhibits prepared by others and not upon firsthand knowledge or is by way of answer to a hypothetical question premised upon an assumed state of facts, the dangers inherent in a jury's according to such testimony more weight than the circumstances reasonably attach to it is accentuated. Cf. 31 Am. Jur. 2d, Expert and Opinion Evidence, §§ 39, 181.

It has been said that "[e]xpert opinion . . . is only an ordinary guess in evening clothes." *Earl M. Kerstetter, Inc.* v. *Commonwealth,* 404 Pa. 168, 173, 171 A.2d 163. It is, of course, more than that, and properly introduced and accompanied by proper instruction to the jury it can be a most helpful tool in the administration of justice. But it is incumbent upon the court not only to instruct the jury as to

the weight and effect to be given expert testimony and the standards by which it should be evaluated, but also to delineate and to particularize those subordinate facts upon which expert opinion rests when the jury as finder of facts must itself resolve them. " 'The ultimate test of a court's charge is whether it fairly presents the case to a jury in such a way that injustice is not done to either party under the established rules of law. *Cappella* v. *New York, N.H. & H.R. Co.,* 154 Conn. 410, 414, 226 A.2d 394; *Lucier* v. *Meriden-Wallingford Sand & Stone Co.,* 153 Conn. 422, 425, 216 A.2d 818.' *Szlinsky* v. *Denhup,* 156 Conn. 159, 163, 239 A.2d 505. 'A charge . . . is to be considered from the standpoint of its effect upon the jury in guiding them to a correct verdict. *Kowal* v. *Archibald,* 148 Conn. 125, 129, 167 A.2d 859.' *Lucier* v. *Meriden-Wallingford Sand & Stone Co.,* supra, 426." *Siladi* v. *McNamara,* 164 Conn. 510, 515, 325 A.2d 277; *State* v. *Mullings,* 166 Conn. 268, 274, 348 A.2d 645. This is not a situation where a charge may have been more complete but, taken as a whole, it is sufficient. See *Gosselin* v. *Perry,* 166 Conn. 152, 162, 348 A.2d 623; Maltbie, Conn. App. Proc. § 94. Particularly, the charge in not instructing the jury to disregard the opinion of Chapman as to the defendant Hoxie's speed predicated upon pushing the Hunt car if they found that the Hunt automobile rolled over, failed in its primary purpose which is "to assist the jury in applying the law correctly to the facts which they might find to be established." *Vita* v. *McLaughlin,* 158 Conn. 75, 77, 255 A.2d 848; *Velardi* v. *Selwitz,* 165 Conn. 635, 637, 345 A.2d 527; *Mack* v. *Clinch,* 166 Conn. 295, 297, 348 A.2d 669; Maltbie, op. cit. § 75. That omission could only have materially prejudiced the defendant Hoxie on the crucial ques-

tion of speed by its failure to direct attention to important conflicting evidence. The charge on this crucial feature of the case was inadequate for the guidance of the jury. See Maltbie, op. cit. §§ 87, 89. We conclude that there is merit to the defendant Hoxie's assignment of error addressed to the court's charge relevant to the issue of liability.

The defendant Hoxie claims that the amount of damages awarded to the plaintiff Nash was excessive and that the verdicts rendered for the plaintiffs Hunt and the stipulated judgment thereafter rendered for the plaintiff Carl Hunt were also unsupported by the evidence and excessive. He assigns as error the court's denial of his motions to set aside the verdicts and the judgments as rendered, asserting that the verdicts were excessive and not supported by the evidence, and that "if the Jury was not influenced by partiality, prejudice or corruption, it certainly reached its result by mistake." In reviewing the refusal to set aside a verdict on the ground that the damages are excessive, we test the action of the trial court by the evidence contained in the appendices to the briefs. *Camp* v. *Booth,* 160 Conn. 10, 11, 273 A.2d 714. "Such evidence must be given the most favorable construction in support of the verdict of which it is reasonably capable." *Hanauer* v. *Coscia,* 157 Conn. 49, 53, 244 A.2d 611.

As to the damages sustained by the plaintiff Nash, there was evidence from which the jury could find that as a result of the collision he sustained a fracture of his facial bones, a comminuted fracture of his nasal bone with depression and displacement, a fracture of the floor of his right and left orbits with a loss of fatty tissue under the right eye resulting in a sunken eyeball, double vision, some of it

permanent, and a deviated septum. While the sunken eyeball and deviated septum can be corrected by surgery, the eyeball rests on fatty tissue within the orbit. A fracture of the orbit usually results in a loss of fatty substance, thus causing the eyeball to sink lower in the orbit. The sunken eyeball is known medically as an enophthalmos, and once the fatty tissue is lost it is never regained. Corrective surgery entails taking tissue from the thigh to fill in the hollow of the orbit. At the time of trial Nash had a life expectancy of forty-six years, and his medical expenses, including the probable cost of future operations, totaled $3604.21. Considering the extent of his injuries and his pain and suffering as testified to by him and his attending physician, we concur with the conclusion of the trial court, which, in denying the defendant Hoxie's motion to set aside the verdict, noted: "Although the verdict of $50,000 may be somewhat on the high side it cannot be said that it is excessive as a matter of law." "The basic question is whether the award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury were influenced by partiality, prejudice, mistake or corruption. *McKirdy* v. *Cascio,* 142 Conn. 80, 86, 111 A.2d 555. The action of the trial court is not to be disturbed unless it abused its legal discretion and, in determining this, great weight should be given to the action of the trial court and every reasonable presumption should be given in favor of its correctness. *Camp* v. *Booth,* 160 Conn. 10, 13, 273 A.2d 714." *Ruda* v. *McKinstry,* 162 Conn. 268, 273, 294 A.2d 318.

We have reviewed the evidence on the issue of the damages awarded to the plaintiff Carl Hunt and

conclude that it cannot be held as a matter of law that the award to him does not fall within the necessarily uncertain limits of just damages. *Minnelli* v. *Poulos,* 166 Conn. 173, 174, 348 A.2d 673; *Neal* v. *Shiels, Inc.,* 166 Conn. 3, 20, 347 A.2d 102.

Relevant to the issue of damages, the defendant Hoxie has also assigned as error the admission into evidence of certain medical bills offered as full exhibits during the testimony of Carl Hunt. It is the defendant Hoxie's contention that while the bills were admissible on the first count to show the treatment received by Carl Hunt, nevertheless they were inadmissible on the second count as evidence of the expenses incurred by Vincent Hunt for that treatment, and that the "bills incurred by the father . . . were these bills to be offered, he is the proper person for them to be offered from." The court admitted the exhibits for both purposes and an exception was taken.

The record and the defendant's brief are both somewhat vague on whether the defendant Hoxie's precise objection is to the admissibility of the evidence under settled principles of relevancy and materiality or whether he claims the medical bills were incapable of proper authentication by Carl Hunt. "Evidence is admitted, not because it is shown to be competent, but because it is not shown to be incompetent." *Pope Foundation, Inc.* v. *New York, N.H. & H.R. Co.,* 106 Conn. 423, 435, 138 A. 444; *State* v. *Towles,* 155 Conn. 516, 523, 235 A.2d 639. To support his claim, the defendant Hoxie has submitted scant authority and that we find to be inapposite. Absent a showing of reversible error, we will not disturb the discretion of the trial court in determining the admissibility of evidence. An

objection to an exhibit merely because it is offered through the medium of an otherwise competent witness is not tenable. 31A C.J.S., Evidence, § 186; see Model Code of Evidence rule 101; see, e.g., *Bonczkiewicz* v. *Merberg Wrecking Corporation,* 148 Conn. 573, 583, 172 A.2d 917. The defendant Hoxie's claim of error is directed at the introduction of the bills for expenses through the medium of Carl Hunt rather than through Vincent Hunt, and there is no claim made that the total expenses incurred were not reasonable. We find no reversible error in the ruling of the court admitting into evidence through the witness Carl Hunt the bills which he testified were incurred as a result of the accident in question.

We find no error on the trial of the issues of damages in these cases and error only on the trial of the issues of liability, where, as we have indicated, there was error in the charge. Accordingly, it is necessary to have a new trial on the issues of liability only, and it is unnecessary to have a new trial on the issues of damages. General Statutes § 52-266; *Murray* v. *Krenz,* 94 Conn. 503, 507, 109 A. 859; see, e.g., *Velardi* v. *Selwitz,* 165 Conn. 635, 345 A.2d 527.

There is error and the cases are remanded to the Superior Court for a new trial limited to the issues of liability.

In this opinion SHAPIRO, LOISELLE and MACDONALD, Js., concurred; BOGDANSKI, J., dissented.