[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
The plaintiff AL-MOR commenced this action seeking damages for vexatious suit against the defendants. The plaintiff claims there was no probable cause for the underlying action to quiet title brought by the Loebs.
In that action, the Loebs sought a determination of title to two pieces of property known as (1) the Fall Swamp Lot and (2) the Hubinger property. A trial was begun before Judge Bogdanski on April 6, 1989 but a mistrial was declared when he became ill. A second trial was then had before Judge Schaller which began on April 3, 1991. He found in favor of the plaintiff AL-MOR and was upheld on appeal. It was then that this vexatious suit action was brought against the Loebs who were the plaintiffs in the quiet title action. During the first trial, Attorney Cronan testified for the Loebs as their quiet title expert and Mr. Woodworth testified as their land surveyor expert. At the second trial Attorney Scharf testified as an expert on real estate titles and Mr. Woodworth also testified. In a stipulation dated May 23, 1991 the plaintiff AL-MOR stipulated it had no interest in the Fall Swamp Lot and that judgment as to that parcel could enter in favor of the Loebs.
The defendants in their motion for summary judgment raise several issues. Their first claim is that since this is a vexatious suit claim, it does not properly lie because such a claim is barred where the underlying litigation terminated in favor of the party who is sued for vexatious suit. They also argue that under the doctrine of vexatious suit there is an absolute defense if the underlying action — here for quiet title — was initiated based on probable cause to do so.
First, the Loebs argue that there was probable cause to bring the quiet title action since the Madison Tax Assessor was taxing them for property later determined not to be theirs so the boundaries had to be determined by a quiet title action. Secondly, they maintain on the merits there was probable cause CT Page 7365 because at trial the Loebs presented the testimony of three experts. Finally, they argued that they relied on the advice of counsel and if that doctrine is held to apply probable cause is presumed by the courts to exist thus barring an action for vexatious suit.
The court will discuss the termination of suit issue first. Then it will discuss the advice of counsel defense and the issue of probable cause as it relates to the city tax issue and the question of probable cause on the merits.
JUDGMENT ENTERED IN PART FOR DEFENDANTS
The defendants claim that it is undisputed that the trial court entered judgment in part for them. Judgment in part was the result of a negotiated settlement as to the so-called Fall Swamp lot. In Blake v. Levy, 191 Conn. 257, 264 (1983), the court said: "When a lawsuit ends in a negotiated settlement, it does not terminate in the plaintiff's favor and therefore will not support a subsequent suit for vexatious litigation."
But the "lawsuit" between the parties was not terminated because of the settlement of one aspect of the original claim brought by the Loebs. The fact that the Loebs may have had probable cause to initiate their proceedings with respect to the Fall Swamp lot and its boundaries says nothing about whether there was probable cause to initiate the entire litigation.
The fact that one acted with probable cause in initiating a quiet title action with respect to one portion of disputed property does not mean that there was probable cause to initiate the action as to all portions or areas of property in dispute. The very settlement agreement between the parties as to the Fall Swamp lot indicates that it was a discrete area of land separate and distinct from other disputes these parties had as to other distinct areas and portions of land. There was no necessary connection between resolution of the dispute as to the Fall Swamp land in the Loebs' favor and the resolution of their other claims — trial was concluded in the latter matters with a result unfavorable to the Loebs at the trial level and on appeal. To say that under these circumstances the plaintiff here would be precluded from bringing a vexatious suit on that basis alone ignores the policy behind allowing such a cause of action in the first place. The settlement conferred no ex post facto justification on the Loebs' original decision to sue the CT Page 7366 plaintiff on all the broad claims the Loebs made in their initial suit. Cf. DeLaurentis v. New Haven, 220 Conn. 225, 253 (1991). In fact it has been generally held that a dismissal or judgment on some portions of underlying civil litigation will not constitute a final termination of the civil proceeding where it appears that other claims pertinent to the same proceedings remain pending, "Malicious Prosecution — Termination,"
30 ALR4th 572, 586, § 4(b) citing Kantowitz v. Cipfel, 22 Conn. Sup. 272,277 (1959).
Advice of Counsel
To establish a cause of action for vexatious suit it is necessary to prove want of probable cause, Vandersluis v. Weil,176 Conn. 353, 356 (1978). In Wall v. Toomey, 52 Conn. 35, 36
(1884) the court said "the legal idea of probable cause is a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances in entertaining it." There must be "a reasonable, good faith belief in the facts alleged and the validity of the claim asserted".DeLaurentis v. New Haven, 220 Conn. 225, 256 (1991).
Advice of counsel is a complete defense to an action of vexatious suit. Vandersluis v. Weil, 176 Conn. at p. 361. An action for malicious prosecution is in most respects governed by the same principles as an action for vexatious suit. Vandersluis
says: "a vexatious suit is a type of malicious prosecution action", id p. 248. As to the "advice of counsel" defense, where it is found it is considered "conclusive of the existence of probable cause" for malicious prosecution, Restatement (Second) Torts, § 666(1), also see Posser and Keeton on Torts, § 119, page 878; the same analysis would apply to the defense in an action for vexatious suit.
The defense must be strictly applied, however, in the sense that it appears to the court that the advice referred to must be explicit advice to initiate litigation. Thus, Prosser says at § 119, p. 878: "The layman's (sic) ignorance of the law has been taken into account in the almost universal holding that probable cause is established where the prosecution was instituted with the advice of counsel," see also Kuhnhausen v. Stadleman, 148 P.2d 239,246 (Or; 1944); Duval Jewelry Co. v. Smith, 13650 878, 880 (Fla, 1931), see also 54 CJS § 47 p. 573 where it is said that an aspect of the defense is that "counsel advised . . . the initiation CT Page 7367 of the civil suit."
If a lawyer by communication to the client or to another in the client's behalf merely indicates factors that would tend to support the client's claim, this should not provide an absolute defense. The actual advice to initiate litigation is a unique lawyer skill and it assumes the lawyer has actually weighed and evaluated all positions and claims opposed to the client's position and still advises suit. Only if initiation of prosecution or civil suit is advised should it then be an absolute defense even if "erroneous and not warranted by the facts submitted to counsel," Prosser at § 119, p. 878. This is not to say that advice of counsel as to his or her opinion of a particular claim cannot be considered in determining the issue of probable cause and whether there was a reasonable belief that grounds existed for initiating suit because there was a basis for the claims and thus a fair chance of prevailing. But this is a distinct type of advice from that which advises the client that initiation of suit would be appropriate.
The advice of counsel defense here as strictly understood does not apply. The defendants refer to a 1972 letter submitted to them by a lawyer some fifteen years before litigation was initiated that says property deeded to the Morgillos appeared to overlap their property. Another attorney wrote to the Morgillos once in 1982 and again in 1984. Both of these letters are demand letters that lay out to the Morgillos a variety of factors which the attorney believes support the Loebs' position that the boundaries of the Loeb and Morgillo properties should be adjusted in the Loebs' favor.
The 1984 letter, written some three years before litigation was initiated, says that the Loebs' intention was to bring suit if the matter could not be amicably resolved and offered to set up a meeting to try to resolve the dispute.
Both Loebs have filed affidavits in which they state they relied on the opinions and advice of counsel in determining to bring suit. They allude to the three letters just mentioned and the advice given to them by the attorney who actually brought the litigation. The latter advice is not described and not pursued as a factor to be considered in the defendants' briefs on the advice of counsel defense.
Nothing in the record before me indicates there was an CT Page 7368 opinion given by a lawyer to the Loebs that based on the facts and information submitted to them a lawsuit could properly be initiated. A party should not be able to rely on the absolute defense of advice of counsel, which in effect absolves the party from making his or her own evaluation as to the propriety of suit as long as the lawyer gets all the facts, by pointing to this or that phrase in a letter, written years before suit, which support a claim against another party. The crucial advice which leads to the injury the vexatious suit action is based upon, is the lawyer's actual advice to bring suit and it is only reliance on the lawyer's conclusion as to that ultimate issue that should provide the protection. The affidavits submitted are too conclusory to determine any such advice was given. In fact, the affidavit of Lawrence Loeb by its language seems to bar any reliance on the defense. It says at paragraph 9 that Mr. Loeb relied on the advice of the attorneys "in determining we should bring a lawsuit". It's the lawyer's determination that a lawsuit is warranted that provides the defense. In conclusion, it should also be stated that the 1972 letter from Attorney McVerry it would appear to involve only the Fall Swamp Lot. This is the same parcel concerning which the parties entered into an agreement after suit was initiated by the Loebs and therefore reliance on it for an advice of counsel defense to this suit suffers from the same limitations referred to earlier in this decision if it is sought to be used as an absolute bar to this vexatious suit action (See "Judgment Entered in Part for the Defendants" discussion.)
Probable Cause
The defendants also argue that summary judgment should be granted in their favor because there was probable cause to bring the original quiet title action. They argue that there are no disputed material facts and it follows that the question of probable cause is an issue of law for the court. In DeLaurentisv. New Haven, 220 Conn. At pp 252-253 the court said:
 "Whether the facts are sufficient to establish the lack of probable cause is a question ultimately to be determined by the court, but when the facts them selves are disputed, the court may submit the issue of probable cause in the first instance to a jury as a mixed question of fact and law."
CT Page 7369
DeLaurentis cites Restatement (Second) Torts § 681B which says that the Court determines whether the defendant had probable cause for his or her action but then says "subject to the control of the court, the jury determines (a) the circumstances under which the proceedings were initiated in so far as may be necessary to enable the court to determine whether the defendant had probable cause for initiating them.".
A quiet title action is brought under § 47-31 of the general statutes. Under the statute suit may be brought by a person claiming title to real property (plaintiff) against any person who claims to own the land adverse to the plaintiff or against any person whom the land records disclose has any interest, claim or title conflicting with the plaintiff's claim, title or interest" for the purpose of determining such adverse estate, interest or claim and to clear up all doubts and disputes and to quiet and settle title to the property."
The defendants seem correct in asserting that a purpose of the statute is to allow suits when land titles are not clear or when there is doubt concerning the location of a boundary. The question becomes was their probable cause to bring the quiet title action.
Probable cause has been defined as "the knowledge of facts, actual or apparent, strong enough to justify a reasonable man (sic) in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of." Shea v. Berry,93 Conn. 475, 477 (1919), cited in DeLaurentis at220 Conn. Page 256. As the latter court says there must be a "reasonable, good faith belief in the facts alleged and the validity of the claim asserted", id. P. 256. Prosser takes the position that the probable cause standard in bringing a civil suit is satisfied when the party "reasonably believes that he (sic) has a good chance of establishing it to the satisfaction of the court or the jury. He may, for example, reasonably submit a doubtful issue of law, where it is uncertain which view the court will take", § 120, page 893.
In this case, the defendants base their contention that there was probable cause to initiate and pursue the quiet title action on two grounds, they argue that the Loebs paid property tax on the land which was in dispute so that it was necessary to bring the quiet title action for this reason alone. Secondly, they contend that the Loebs presented expert testimony of a CT Page 7370 conflict in the chain of title.
(a)
The Loebs claim they had probable cause to bring the quiet title action with regard to the so-called Hubinger parcel because they were assessed for real estate taxes on that property and thus "they were paying taxes on land determined by the court in the underlying (quiet title) action to be owned by (the defendant (AL-MOR)", p. 11 pf 4/16/96 brief. They contend that clearing up this discrepancy clearly provided a legitimate basis for bringing the quiet title action.
The defendants attach tax bills showing they paid taxes not only on the Fall Swamp Lot but on property to the north of that which was claimed by the Loebs to be the correct location of the Hubinger parcel. They lost this claim.
But the Loebs note the tax assessors map places the Hubinger parcel north of the Fall Swamp Lot and the five acre Smith parcel which they purchased. The Loebs refer to the tax assessor's map and the map prepared by, a surveyor, Russell Waldo; they contend it is obvious that if these maps are compared that they were being assessed on land beyond the Smith parcel. Not only does this support their claim that they owned land north of the Fall Swamp lot that extended into the property claimed by AL-MOR but at the least there was some confusion over boundaries. Thus, they claim they had probable cause to bring the quiet title action "if only to clear up the tax discrepancy".
The Court will assume for the purposes of discussion and the plaintiff does not seem to contest that the Loebs paid taxes on property they claimed and which the court determined not to belong to them.
The Loeb's argument on this issue in part and at least for the court is difficult to follow. It was the Loebs who made the claim that they owned property north of the Fall Swamp Lot and on which in fact they had been paying taxes. The fact that the 1982 and 1984 letters from their lawyer to the Morgillos exist and that suit was brought by the Loebs indicate the Morgillos did not agree with the above referenced claim.
The real relevance of the fact that they paid taxes on this claimed land on the issue of probable cause is whether the fact CT Page 7371 that the tax assessor of Madison taxed them on this land, standing alone, is a fact which taken as known to them at the time the quiet title action was brought could provide a basis to find probable cause to have brought the quiet title action in the first place.
Unless a basis is provided as to why the tax assessor reached the conclusion she did, the fact that she reached the conclusion cannot provide support for a finding of a reasonable basis for initiating the quiet title action on the part of the Loebs. The court is not aware of the source of or the basis for the tax assessor's map 119 attached to the bills which provided the description of the property actually taxed. Either the tax assessor was right or she was wrong in her tax assessment of the Loebs — the Loebs had facts, information or circumstances at their disposal to make their own conclusion about that. They concluded she was right ad they were paying taxes on land they really owned. If the facts and information at the Loebs' disposal did not provide a reasonable basis for that conclusion they had no right either to agree with the tax assessor or bring the quiet title action.
(B)
The second basis for the claim by the defendants is characterized by them as probable cause on the merits but this claim is narrowly defined. They claim there was probable cause to have initiated the quiet title action because they presented three expert witnesses who testified in their behalf. The defendants argue at page 13 of their April 16, 1996 brief: "Expert testimony supporting the plaintiffs claim provides probable cause for that claim."
The defendants presented the testimony of three individuals who testified as experts at trial. Two were attorneys who testified as experts on real estate titles and one man testified as an expert in surveying.
Our court has not held that expert testimony is required in a dispute over title or a boundary between properties. It has been held that opinion evidence from an expert witness is only one factor among many on which a trial court can base its decision in a boundary line dispute — that was apparently the case here as evidenced by Judge Schaller's decision. However, as the court said in Odem v. Pugh, 434 So.2d 258, 259 (Ala, 1983): CT Page 7372 "It is of course proper for the trial court to hear expert testimony from a surveyor in connection with a boundary line dispute and to weigh such testimony in conjunction with other evidence before it in arriving at its ultimate decision", also see Nabours v. Whitelly, 466 S.W.2d 62, 64 (Tex., 1971), cfCommonwealth v. Morgan, 303 S.E.2d 899, 901 (footnote 3, 1983).
Also given the nature of the dispute here and the questions presented regarding the transfer of land to the various parcels of property involved in this litigation and the issues involving the chain of title and whether there were clouds on title, it would appear appropriate to have offered to offer the testimony of experts in real estate titles. The plaintiff itself offered the testimony of a title searcher.
But broad reference to expert testimony offered at the time of trial and attachment of that testimony to the moving papers in a summary judgment action as a means to establish that probable cause which would bar a vexatious suit claim, perhaps goes too far. Thus an older case said the following in a malicious prosecution action where it held the acquittal of the plaintiff could not be considered as prima facie evidence of the want of probable cause:
 "The want of probable cause must be shown by facts and circumstances existing and information which came to the defendant at the time the prosecution was instituted. Facts subsequently transpiring and information subsequently received, could not from the nature of the case influence his action at that time."
 Thompson v. Beacon Valley Rubber Co., 56 Conn. 493, 499 (1888)
The Court in Smith v. King, 62 Conn. 515, 518-519 (1893) said, referring to the parties in a vexatious suit action:
 . . . "evidence in favor of either plaintiff or defendant, as to good faith or want of it, must be confined to the knowledge, or means of knowledge, which the defendant had before he acted, and by which his action was influenced"
CT Page 7373
Prosser at § 119, page 876 of his Fifth Edition says: "Probable cause is judged by appearances to the defendant at the time he (sic) initiates prosecution, not by facts discovered later."
The problem here with relying on expert advice as such as the basis for probable cause then is really twofold. First, non-lawyer expert advice cannot be de facto elevated to the advice of counsel defense which is permitted when relied upon, to establish probable cause. It is also true that any expert opinion only has force if the underlying facts it is based on are established,Nash v. Hunt, 166 Conn. 418, 426 (1974).
In any event, seeing that the defendants' knowledge of facts and circumstances at the time suit was initiated is critical,when the expert opinion was made available to the defendants is critical.
Here it is clear that Attorney Scharf communicated with the defendants after the first trial and before the second trial, obviously long after suit was first initiated. Attorney Cronan at one point in his deposition testified that he was brought into the case to assist the defendants' attorney which suggests that he was not involved in any initial decision to bring suit.
Mr. Woodworth, the surveyor, indicates he was contacted by Mr. Loeb in 1971 to survey what the parties agreed to call the Fall Swamp Lot. He produced a map of that lot and made revisions to it over the years, the latest one being in 1991. He also prepared a map dated 1985 which apparently was a map of the Hubinger property. All of this activity did take place before the quiet title action was brought by the Loebs. But the problem with relying on Woodworth's testimony to provide probable cause is that the portions referred to in the man's deposition are somewhat indecipherable because he refers during his testimony to maps and/or deeds which in themselves are not attached to the deposition so the court has no way of knowing what the underlying facts are upon which he bases his opinion whatever that may exactly be.[1]
The court is not saying the plaintiff's argument is internally inconsistent but it does reject it because it seems to base itself on a position that merely equates the procurement of an expert opinion with the establishment of probable cause. CT Page 7374
Finally, it is true that the defendants did have the Clark Hall and Peck letter as of 1972 some fifteen years before the date of the suit. That letter also cannot be used as a basis to show initiation of the suit was based on probable cause. The letter is completely conclusory and nothing is attached to it for reference to show the basis of those conclusions. Also, there is a glaring "N. B." to the following effect: "Such state of facts as an accurate survey of said premises would disclose. It is possible that boundary line agreements will be necessary to establish locations of the boundaries of said premises". In the reply brief the defendants themselves characterize this whole matter as turning on the location of boundaries. The court does not accept the defendants reliance on experts to establish probable cause given the facts of this case.
In any event, the court denies the motion for summary judgment.
CORRADINO, J.