# STATE OF CONNECTICUT *v.* MICHAEL G.[1]
## (AC 27665)

McLachlan, Harper and Beach, Js.

Argued February 21—officially released May 6, 2008

---

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to use the defendant's full name or to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

*Cameron R. Dorman*, special public defender, for the appellant (defendant).

*Lisa A. Riggione*, senior assistant state's attorney, with whom, on the brief, were *David Shepack*, state's attorney, and *Dawn M. Gallo*, assistant state's attorney, for the appellee (state).

*Opinion*

BEACH, J. The defendant, Michael G., appeals from the judgment of conviction, rendered after a jury trial, of four counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2) and four counts of risk of injury to a child in violation of General Statutes § 53-21. On appeal, the defendant claims that the trial court improperly (1) determined that there was sufficient evidence to support the jury's verdict of guilty, (2) instructed the jury on expert witness testimony and (3) admitted into evidence photographs of his residence and testimony by a state police trooper who executed a search of the defendant's residence. We affirm the judgment of the trial court.

The jury reasonably court have found the following facts. In early 1998, when the victim, M, was eight years old, she moved to northwestern Connecticut with her mother, C, her two brothers and her father, the defendant. She entered second grade at the local school. Five or six months after the move to Connecticut, the defendant began to assault her sexually. M testified that one day, the defendant called her into his bedroom, removed her clothes and positioned her on her back,

on the side of the bed, with her legs dangling over the edge. He then inserted his penis into her vagina. When he was finished, the defendant ejaculated into a washcloth.

M testified that the defendant had vaginal intercourse with her on at least a weekly basis through the sixth grade, unless the family was on vacation or M had her menstrual period. Before engaging in intercourse, the defendant sometimes would give M alcoholic beverages and show her pornographic movies or images. During intercourse, the defendant occasionally used petroleum jelly as a lubricant. The defendant also would enter the shower with M and have her wash his body, including his penis.

When M was twelve years old, in 2001, the family moved to Massachusetts, where she resided with her immediate family, as well as her paternal uncle and his wife and their three children. Approximately two years after moving to Massachusetts, in August, 2003, M's mother, C, moved to upstate New York to care for her ailing father and returned to Massachusetts on the weekends. M's brothers had gone to New York to live with their grandparents in June, 2003. M and the defendant were planning to join them in New York at some point in the near future and were preparing to move in October, 2003. On October 27, 2003, M called her mother in New York and left a message. When C returned the call, M told her that the defendant had been assaulting her and that she "couldn't take it anymore." The day before M called C, the defendant had told her that he wanted to have sex with her, but she had refused. In response, the defendant hit her in the face. Upon hearing this news, C told her daughter to pack her bags secretly and to tell her aunt what had happened. The police arrived shortly thereafter and took M to the police station, where she gave a statement. The defendant was arrested and charged accordingly.

A trial was held in December, 2005. Ann Burgess, an expert in child sexual abuse, testified at the trial. Burgess, who did not treat M, described general symptoms of sexually abused children, including common delayed reporting of such abuse. John Dellenbach, a pediatrician with expertise in the examination of children for sexual assaults, testified about a sexual abuse video colposcopy he performed on M on November 13, 2003. At trial, Dellenbach compared photographs of a normal prepubescent female hymen with photographs of M's hymen, which had a distinctive notch and scar tissue indicative of a tear that had healed. He testified that his finding was consistent with a history of repetitive vaginal intercourse and that, although he did not know how the hymen was injured, it had to have been caused by at least one incident of penetration by a ridged, blunt instrument. He noted, however, that the injury could not have been caused by masturbation or a tampon.

At trial, family members testified about questionable behaviors on the part of the defendant, such as his propensity to position M on his lap, directly over his genital area, while dressed only in underwear. The defendant also slept with M in the marital bed while C was away in New York. M's older brother testified that when M was six or seven, he walked into the defendant's bedroom and found the defendant naked with M, who was not wearing a shirt or pants. The defendant explained to M's older brother that M had "messed her pants." M's older brother also testified that M and the defendant were often alone in the marital bedroom and that the defendant often angrily insisted that the brother make his presence known when he was near the bedroom. M's uncle, who resided with M in Massachusetts, testified that the defendant spoiled M and bought her makeup and jewelry.

On December 20, 2005, the jury returned a guilty verdict on four counts of sexual assault in the first degree and four counts of risk of injury to a child. On March 10, 2006, the defendant was sentenced to a total effective term of eighty years imprisonment, execution suspended after forty years, followed by six years of special parole and twenty years probation. This appeal followed.

I

The defendant first claims that the evidence was insufficient to support the conviction as to the sexual assault and risk of injury charges stemming from his conduct in 1998.[2] Specifically, he contends that M's testimony contained inconsistencies such that the jury could not have found that any assaults occurred in 1998. We disagree.

When reviewing sufficiency of the evidence claims we apply a two part test. "First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Green*, 261 Conn. 653, 667, 804 A.2d 810 (2002).

The defendant argues that the evidence was insufficient to demonstrate that he assaulted M in 1998. In support of his argument, the defendant cites portions

[2] Two of the counts listed in the amended long form information pertain to conduct occurring in 1998. The information as to those counts states in relevant part: "Count One . . . [the defendant] did engage in sexual intercourse . . . with a female child . . . on divers dates in 1998, in violation of Connecticut General Statutes § 53a-70 (a) (2). . . . Count Six . . . [the defendant] did have contact with the intimate parts of a child under the age of sixteen . . . on divers dates in 1998, in violation of Connecticut General Statutes § 53-21 (2).

of M's testimony when her memory was faulty. In particular, the defendant notes that "she claimed that the assaults began five to six months after the family moved to Connecticut. She also claimed that she was in the second grade when the assaults began. . . . Since the victim moved to Connecticut in January, 1998, it would be impossible for the sexual assaults to occur while she was in second grade because she would not have been in school, but on summer break at the time she claims the sexual assaults began." (Citation omitted.) The defendant concludes that the jury therefore had to engage in speculation to find that the assaults began in 1998.

The defendant's claim, although clothed in sufficiency of the evidence language, in reality challenges the credibility of M's testimony. His attack on M's credibility is exemplified by his description of her testimony as "clearly improbable and unconvincing," as well as "unreliable and impossible." "Our task is to view the evidence in the light most favorable to sustaining the verdict before determining if the jury reasonably could have concluded that such evidence established guilt beyond a reasonable doubt. . . . We assume that the jury credited the evidence that supports the conviction if it could reasonably have done so. Questions of whether to believe or to disbelieve a competent witness are beyond our review. As a reviewing court, we may not retry the case or pass on the credibility of witnesses. . . . Our review of factual determinations is limited to whether those findings are clearly erroneous. . . . We must defer to the trier of fact's assessment of the credibility of the witnesses that is made on the basis of its firsthand observation of their conduct, demeanor and attitude." (Citation omitted; internal quotation marks omitted.) *State* v. *Osoria*, 86 Conn. App. 507, 514–15, 861 A.2d 1207 (2004), cert. denied, 273 Conn. 910, 870 A.2d 1082 (2005). On the record before us, the jury

reasonably was free to credit M's testimony. Because we cannot decide issues of credibility, the defendant's first claim fails.

## II

The defendant next claims that the court improperly instructed the jury. Specifically, the defendant claims that pursuant to *Nash* v. *Hunt*, 166 Conn. 418, 352 A.2d 773 (1974), "the trial court's charge to the jury failed to (a) delineate specifically the subordinate facts and (b) adequately advise and caution the jury regarding the proof and completeness of the facts used in opinions based on hypothetical questions." We agree that the court should have given the requested instruction but conclude that the error was harmless.

The following additional facts are necessary to our resolution of the defendant's claim. During her testimony at trial, the state's expert on child sexual abuse, Burgess, answered several hypothetical questions posed by the state. Following the court's instruction to the jury, the defendant preserved his claim by taking exception to the court's failure to instruct the jury with his requested charge concerning expert testimony and hypothetical questions.[3]

[3] The defendant's written requested charge was as follows: "In addition to the instruction I have just given you about expert witness testimony, in this case, you heard from a witness, Ann Burgess, who testified as to her opinions regarding sex abuse trauma syndromes, including the delayed reporting of sexual abuse, based on what we call hypothetical questions— that is, where she was asked to assume certain facts and then give an opinion on those facts without having had any direct knowledge of or contact with any of the witnesses or parties in this case.

"Where an expert witness gives such an opinion, the value of that opinion depends on the truth and completeness of those facts. You should consider whether those facts were proven or not, and you should consider whether or not her opinion was based on all the relevant facts or whether some relevant facts were omitted. In a situation such as this, the expert witness cannot vouch for the credibility of the complainant in this case, nor state an opinion that the complainant has, in fact, been abused, and you must disregard any testimony from her which constitutes a direct or indirect assertion that validates the truthfulness of the complainant's testimony."

"Although [a] request to charge which is relevant to the issues of [a] case and which is an accurate statement of the law must be given . . . [a] refusal to charge in the exact words of a request . . . will not constitute error if the requested charge is given in substance. . . . Thus, when the substance of the requested instructions is fairly and substantially included in the trial court's jury charge, the trial court may properly refuse to give such instructions." (Internal quotation marks omitted.) *State* v. *Ledbetter*, 263 Conn. 1, 22, 818 A.2d 1 (2003).

In *Nash* v. *Hunt*, supra, 166 Conn. 426–27, our Supreme Court addressed the issue of proper jury instructions concerning expert testimony, noting that "it is incumbent upon the court not only to instruct the jury as to the weight and effect to be given expert testimony and the standards by which it should be evaluated, but also to delineate and to particularize those subordinate facts on which expert opinion rests when the jury as finder of facts must itself resolve them." That court also noted in regard to expert witness' answers to hypothetical questions that those answers "would have value only insofar as [the jury] found the facts assumed in the question upon which the opinion was based to have been proved." Id., 425–26. These principles expressed in *Nash* were reiterated in *State* v. *Russo*, 38 Conn. Sup. 426, 450 A.2d 857 (1982), in which the Appellate Session of the Superior Court observed that "where the opinion testimony of an expert witness is based upon exhibits prepared by others and not upon firsthand knowledge, or is by way of answer to a hypothetical question premised upon an assumed state of facts, there is an increased danger that the jury will attach undue weight to the testimony." Id., 444. That court additionally noted that the "[trial] court in its charge concerning hypothetical questions properly instructed the [jurors] that they must reject the opinion of an expert witness to the extent that it is based on

subordinate facts which they do not find proved." Id., 445; see also *Pischitto* v. *Waldron*, 147 Conn. 171, 177, 158 A.2d 168 (1960).

As we have indicated, the defendant sought an instruction informing the jury that when an expert has given an opinion based on a hypothetical question, the value of that opinion depends on the truth and completeness of the facts on which it is based and, further, that the jury should consider whether those underlying facts were proven. The defendant's request to charge constituted an accurate statement of the law expressed in *Nash* and was relevant to the issues in the case. The court, therefore, was obligated to give the requested charge, either as sought or in substance. Although the court gave a lengthy instruction on expert testimony, the instruction did not contain the requested charge.[4]

---

[4] The court's complete instruction on expert testimony was as follows: "In this case, two witnesses took the [witness] stand and stated to you not merely what they knew as facts, but they gave opinions as experts. An expert witness may give an opinion even though that opinion is not expressed in terms of certainty, so long as the opinion is expressed in terms of reasonable probability, in terms of what is reasonably probable. No matter what may be the expertise of a particular witness who states to you an opinion upon a fact in a case, that opinion is subject to review by you. It is in no way binding upon you. It is for you to consider along with the other circumstances in this case, and, using your best judgment, to determine whether or not you will give any weight to it, and, if so, what weight you will give to it.

"In weighing and considering the testimony of an expert, you should apply to him or her the same considerations of credibility that you apply to any other witnesses, such as his or her appearance and demeanor on the [witness] stand, his or her interest or lack of interest in the outcome of the case, his or her ability to recall and relate facts to you, and all the other considerations you use in judging the believability of any other witness. In deciding the weight to be accorded to the testimony of an expert witness, you should consider his or her education, his or her expertise, his or her ability in the particular field of knowledge and any other material matters of the sort developed in the course of his or her testimony.

"You should consider the proof or lack of proof and the completeness or lack of completeness of any facts considered by the expert in forming his or her opinions or reaching his or her conclusion. You should recall the testimony of the expert witnesses in this case in light of the principles which I just stated to you."

This analysis does not end our inquiry, however, because we must next consider whether the deficient instruction warrants reversal of the judgment and a new trial. This consideration requires application of the harmless error doctrine.

"When a trial error in a criminal case does not involve a constitutional violation the burden is on the defendant to demonstrate the harmfulness of the court's error."[5] (Internal quotation marks omitted.) *State* v. *Sierra*, 213 Conn. 422, 436, 568 A.2d 448 (1990). Our Supreme Court recently stated that "[a] nonconstitutional error is harmless when an appellate court has a fair assurance that the error did not substantially affect the verdict." (Internal quotation marks omitted.) *State* v. *Slater*, 285 Conn. 162, 190, 939 A.2d 1105 (2008); *State* v. *Sawyer*, 279 Conn. 331, 357, 904 A.2d 101 (2006) (en banc).[6]

We conclude that the court's omission of the requested charge was harmless error. Although the court did not give an instruction specifically addressing hypothetical questions as required by *Nash*, the court did instruct the jury concerning expert testimony in general, noting that an expert opinion "is subject to review by you [and] is in no way binding upon you," and that "[y]ou should consider the proof or lack of proof and the completeness or lack of completeness of any facts considered by the expert in forming his or

[5] The defendant concedes that the instructional deficiency was not of constitutional magnitude.

[6] Recently, this court in *State* v. *McCarthy*, 105 Conn. App. 596, 939 A.2d 1195, cert. denied, 286 Conn. 913, 944 A.2d 983 (2008), examined an improper instruction claim under the following standard: "In reviewing claims of instructional [impropriety], we seek to determine whether it was . . . reasonably possible that the jury was misled by the trial court's instructions . . . ." (Internal quotation marks omitted.) Id., 617. We did not, however, engage in a harmless error analysis in that case, concluding instead that the instructions there were proper. We note, in any event, that under either standard of review, the outcome in this case would not be different.

her opinions or reaching his or her conclusion." Moreover, the state's case did not rest entirely on the credibility of M. It also presented physical evidence, as well as corroborative testimony. In light of the foregoing, we cannot conclude that the error substantially affected the verdict.

### III

The defendant finally claims that the court improperly admitted evidence of events that occurred in Massachusetts, which were unrelated to the charged crimes that occurred in Connecticut. Specifically, the defendant claims that the admission of photographs depicting petroleum jelly and wine coolers in the defendant's residence and testimony by a state police trooper who seized wine coolers and pornography from the defendant's residence were not relevant and were improperly admitted "for the sole purpose of bolstering the victim's credibility."[7]

The following additional facts are relevant to our resolution of the defendant's claim. At trial, the state offered into evidence photographs of wine coolers and petroleum jelly taken at the defendant's residence in Massachusetts. It then offered the testimony of M, her

---

[7] The defendant also argues that the admission of the state police trooper's testimony and the photographs constituted impermissible uncharged misconduct evidence. The defendant's challenge on this ground is unfounded, however, because evidence that pornography and wine coolers were merely present in the defendant's house does not, by itself, demonstrate any uncharged misconduct on the part of the defendant.

The defendant additionally asserts that the photographs admitted into evidence were not authenticated properly. The defendant's challenge to the admission of the photographs on this ground is likewise without merit. Testimony by both M and her uncle verifying that the photographs admitted accurately depicted the defendant's residence properly authenticated the photographs. See Conn. Code Evid. § 9-1, commentary ("Evidence may be authenticated in a variety of ways. They include, but are not limited to, the following: . . . A witness with personal knowledge may testify that the offered evidence is what its proponent claims it to be.").

mother and her uncle that the photographs accurately depicted the Massachusetts house where they had lived. The defendant objected to the introduction of the photographs on the grounds that they were not relevant and had not been authenticated properly. He renewed his objection after the state had rested its case. The court disagreed, finding that the exhibits were sufficiently tied in and authenticated by the witnesses who had testified to their accuracy. The state also offered the testimony of Massachusetts state police Trooper Brian Berkel about his seizure of wine coolers and pornography from the Massachusetts residence. The defendant objected to Berkel's testimony on relevancy grounds both at the time the testimony was offered, as well as after the state had rested its case.

Our standard of review for evidentiary rulings is well established. "[T]he trial court has broad discretion in ruling on the admissibility [and relevancy] of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . Evidence is relevant if it has any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence. . . . The proffering party bears the burden of establishing the relevance of the offered testimony. (Citation omitted; internal quotation marks omitted.) *State* v. *Lemay*, 105 Conn. App. 486, 491–92, 938 A.2d 611, cert. denied, 286 Conn. 915, 945 A.2d 978 (2008).

The photographs and testimony in question tended to corroborate factual details surrounding the defendant's commission of the sexual assaults. The state's introduction of the photographic evidence corroborated both M's and C's testimony that the defendant used petroleum jelly, as well as M's testimony that the defendant

had wine coolers. Likewise, Berkel's testimony that he found pornography at the defendant's residence further corroborated M's testimony that the defendant had pornography. It is true that the evidence tended to show that the defendant had these items at a location different from the location of the charged crimes, and the weight of the evidence may have been in issue. Nonetheless, the evidence tended to show that the defendant had the items, and, thus, the evidence had some relevance. We do not find independently that the probative value was outweighed by unfair prejudice. "All that is required is that the evidence tend to support a relevant fact even to a slight degree, so long as it is not prejudicial or merely cumulative." (Internal quotation marks omitted.) *State* v. *Nelson*, 105 Conn. App. 393, 412, 937 A.2d 1249, cert. denied, 286 Conn. 913, 944 A.2d 983 (2008). Accordingly, the court did not abuse its discretion when it admitted the photographs and testimony into evidence.

The judgment is affirmed.

In this opinion the other judges concurred.